STATE ex rel. MITCHELL, ATTY.-GEN. v. McDONALD.

(Division A. Jan. 9, 1933.)

[145 So. 508. No. 30154.]

.F. K. Ethridge, of Meridian, for appellant.

**Reily & Parker,** of Meridian, for appellee.

410

411

Argued orally by **F. K. Ethridge**, for appellant.

**Cook, J.,** delivered the opinion of the court.

This is a quo warranto proceeding wherein the right of Dr. Singleton McDonald to serve as a member of the board of supervisors of Lauderdale county was challenged. At the conclusion of the evidence offered on behalf of the state, the defendant moved to exclude the evidence and direct a verdict in his favor, which motion was sustained; and, from the judgment entered dismissing the petition, this appeal was prosecuted.

The petition filed by the state of Mississippi, on the relation of its Attorney-General, charged that the appellee, Dr. McDonald, unlawfully and without any warrant or right whatever, holds and is exercising the duties of the office of supervisor of district No. 3, Lauderdale county, for the reason that he is not qualified to hold such office in that: First, he was not a qualified elector of the state and county at the time of his purported election to such office; second, that he had been convicted of perjury; and, third, that he was not the owner of real property to the value of three hundred dollars as required by section 196, Code 1930, to render a person eligible to be a member of the board of supervisors.

The allegation that Dr. McDonald was not a qualified elector was based upon the charge that he had not paid all the taxes which had been legally required of him, as provided by law, for the two years preceding the one in which he was elected, while the allegation that he was disqualified to hold office on account of having been convicted of perjury was based upon the charge that

he had entered a plea of guilty to an indictment for perjury in the District Court of the United States for the Eastern Division of Louisiana, New Orleans Division.

The proof offered in behalf of the state failed to support the charge that the appellee was not the owner of three hundred dollars worth of real property, but, on the contrary, it tended to establish that he owned real property of a value largely in excess of that amount.

In support of the charge that the appellee had not, on or before the 1st day of February in the year in which he was elected, paid all taxes legally required of him, and which he had an opportunity of paying, the state offered as a witness the chancery clerk of Lauderdale county for the term embracing the years 1931 and 1932, who testified that the original assessment rolls for the years 1931 and 1932, as made by the tax assessor, were filed with him as chancery clerk and clerk of the board of supervisors, that they were then equalized and revised by the board of supervisors and approved by the state tax commission, and that, after all revisions and corrections had been made in accordance with the directions of the state tax commission, two copies were made by him, one of which was delivered to the sheriff and tax collector for the collection of the taxes due as shown thereby. He also testified that there was kept in the chancery clerk's office a record of all real property sold for delinquent taxes by the tax collector, and these records for the year 1931 were produced and offered in evidence, showing the sales by the tax collector, to the state, of several tracts of land which were assessed to the appellee.

The sheriff and tax collector of Lauderdale county for the year 1931 was also offered as a witness, and he identified a book handed to him as being "The Land Roll of Lauderdale county for 1930 and 1931," and, over the objection of the appellee, he testified that on named pages thereof, there were particularly described lands assessed to the appellee, that the taxes on these

lands were not paid, and that they were sold to the state of Mississippi, and that he certified these sales to the chancery clerk as required by law.

There were also offered in evidence certain copies of certificates, affidavits, and orders which were appended to this book or roll, including an affidavit of the tax assessor that he had faithfully endeavored to ascertain and assess all persons and property in his county, that he had not omitted any person or thing or placed upon or accepted an undervaluation of any property through fear, favor, or partiality, and that he had required every taxpayer to make the oath required to be taken by the person rendering list of his taxable property wherever possible, and that he had filed with the clerk of the board of supervisors a list of every taxpayer who had failed or refused to make oath to his tax list, the orders of the board of supervisors equalizing, accepting, and approving the rolls, and directing the official recapitulation thereof to be certified to the state tax commission, the order of the state tax commission approving the roll, and the order of the board of supervisors finally approving the rolls and directing that two copies thereof be made and one of them delivered to the sheriff and tax collector.

The tax assessor was also offered as a witness, and testified as to the contents of certain township map books and field notes prepared and used by him in the assessment of lands, and particularly in the assessment of lands alleged to belong to the appellee, but this testimony added little or nothing to the evidence tending to fix the appellee's liability for unpaid taxes for the year 1930.

The petition bases the disqualification of appellee to hold office on account of the alleged failure to pay his taxes upon section 250 of the Constitution of 1890, prescribing who shall be eligible to hold office, and section 241 of said Constitution, prescribing who shall be qualified electors. The said section 250 provides that ''all

qualified electors and no others, shall be eligible to office, except as otherwise provided in this constitution;'' while section 241 reads as follows: ''Every male inhabitant of this state, except idiots, insane persons, and Indians not taxed, who is a citizen of the United States, twenty-one years old and upwards, who has resided in this state two years, and one year in the election district, or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement, or bigamy, and who has paid, on or before the first day of February of the year in which he shall offer to note, all taxes which may have been legally required of him, and which he has had an opportunity of paying according to law, for the two preceding years, and who shall produce to the officers holding the election satisfactory evidence that he has paid said taxes, is declared to be a qualified elector; but any minister of the gospel in charge of an organized church shall be entitled to vote after six months' residence in the election district, if otherwise qualified.''

The appellant seems to contend that the assessment roll is conclusive as against the appellee as to his ownership of the land assessed to him thereon, and that delinquency was a necessary consequence of failure to pay the taxes on the lands so assessed, and there are some expressions in our decisions which would seem to support that view, unless they are limited to the statute applied and questions decided. In the case of Miller v. Citizens' National Bank, 144 Miss. 533, 110 So. 439, 440, the court said: ''An assessment of property for taxation is conclusive of two facts: 'First, as against the taxpayer, that he is the owner, or taxable for the property shown on the roll; second, as against the taxpayer and the public, that the valuation of the enumerated property is as finally shown on the roll.' '' In that case, however, the ownership of the property was in no way

involved, but, on the contrary, the appellee was there asserting ownership of the property assessed, but denying that it was liable for an increased assessment placed thereon. It was also true in other cases using this expression that there was involved only the validity of an assessment, and the liability of the property assessed under section 3120, Code 1930, and the personal liability or delinquency of the owner of the property was in no way involved. Consequently, they are not controlling in this cause wherein there is involved the question of whether or not the appellee was personally delinquent for the nonpayment of taxes legally required of him. Section 3120, Code 1930, provides that state and county taxes assessed upon lands or personal property shall bind the same, and be entitled to preference over all judgments, executions, incumbrances, or liens, whensoever created, and that "it shall not be necessary to the validity of an assessment, or of a sale of land for taxes, that it shall be assessed to its true owner; but the taxes shall be a charge on the land or personal property taxed, and the sale shall be a proceeding against the thing sold, and shall vest title in the purchaser, without regard to who may own the land or other property when assessed or when sold, or whether wrongfully assessed, either to a person, or to the state, or any county, city, town or village, or subdivision of either."

It will be noted that the constitutional and statutory provisions with reference to the disqualification of an elector for failure to pay taxes are based upon delinquency for taxes legally required of him, and which he has had an opportunity of paying, but taxes on land and property cannot be legally required of one who is not at the time of the assessment in fact the owner of the property. The failure of an elector to pay taxes on property which he does not own does not create a delinquency which will deprive him of the right of suffrage; consequently, in a proceeding challenging the qualification of an elector on the ground of the failure to pay

taxes assessed to him, the ownership of the property assessed and the liability of the alleged taxpayer for the taxes assessed thereon becomes an issue of fact to be determined, and in the determination of that fact the assessment roll is only prima facie evidence of the ownership of the property assessed. Section 3122, Code 1930, makes every tax lawfully assessed or imposed a debt due by the person or corporation owning the property assessed, and expressly provides that in all actions for the recovery of ad valorem taxes the assessment roll shall only be prima facie correct, and the assessment roll has the same probative force in determining the delinquency of a taxpayer in a proceeding testing his right of suffrage.

The appellee contends, however, that the land assessment roll was not formally offered in evidence and that it was error to admit the evidence of the sheriff and tax collector as to the contents of that part of the roll showing an assessment of lands to the appellee. The book from which the officers testified as to the land assessments against the appellee was identified by them as the "Land Rolls for Lauderdale County for the years 1930 and 1931." The book denominated "Land Roll," showing the assessment of the lands of the county, could refer to no other book than the land assessment roll of the county, and this identification of the book was sufficient. When the sheriff and tax collector offered to testify as to certain assessments of lands as the property of the appellee, as the same appeared on certain pages of this land roll, there was a general objection interposed by the appellee, which was overruled. The appellee now contends that this was erroneous, and that this evidence of the officers as to the contents of the roll should not have been admitted. If objection had been made to the introduction of this evidence on the specific ground that the roll had not been introduced, this objection could, and probably would, have been promptly met by the introduction of the roll, and in the absence of

such specific objection, we do not think the appellee can now complain of the admission of evidence as to the contents of the roll.

Section 268 of the Constitution of 1890, requires that every officer elected or appointed to any office in this state, except judges and members of the Legislature, shall, before entering upon the discharge of the duties of the office, take and subscribe to an oath that he is not disqualified from holding the office. The fact of non-payment of taxes lawfully required of an elector, and which he has had an opportunity of paying, disqualifies, and, in order for one to be eligible to qualify for an office, there must be an absence of disqualification not only at the time of the election, but also at the time the elector seeks to qualify by taking the oath of office, and action, or nonaction, by the election officials, at or prior to the election, will not preclude the courts from inquiring into the right of an elector to qualify and discharge the duties of an office.

The charge that the appellee is disqualified to hold office on account of having been convicted of crime is based upon the record of an alleged plea of guilty to an indictment for perjury in the District Court of the United States for the Eastern District of Louisiana, New Orleans Division. In so far as this charge of disqualification is concerned, the appellee contends that the evidence was properly excluded for three reasons, namely: First, that the record offered to show a conviction was incompetent and insufficient for any purpose, on account of its incompleteness and by reason of the imperfect certificate thereto attached; second, the record introduced to show that appellee had been convicted of perjury is insufficient to show his conviction of such crime, but shows that in the legal sense he has not been convicted of such crime, because a plea of guilty prior to the passing of sentence does not constitute a conviction in the sense that this term is used in prescribing disqualification for office; and, third, the record shows that

the charge relied upon herein is based upon a violation of the laws of the United States, and not the laws of the state of Mississippi, and the conviction complained about, being a proceeding in the federal court and not a state court, would not be within the terms of disqualification for holding office, as fixed by our laws.

For the purpose of the decision of this question, it will be conceded that the record and certificate thereto from the United States District Court are sufficient, and we will base our decision upon the third point suggested in support of the correctness of the action of the court below. The question as applied to the disability of a person to testify has arisen in many cases, and the reasoning and principles applied in those cases apply with equal force to a disqualification for holding office arising out of a conviction of crime, and lead to the conclusion that only convictions of crimes committed under the jurisdiction of this state will disqualify one from holding office in this state. In 29 Cyc. at page 1385, this doctrine is announced in the following language: "The constitution or a statute frequently disqualifies for office one who has been convicted of a felony or a crime generally. Where the constitution contains such a provision it applies to crimes committed under the jurisdiction of the state providing the disqualification and not to crimes against another government."

In 1 Wigmore on Evidence (2 Ed.), par. 522, there is quoted with approval the text of Greenleaf on Evidence, par. 376, to the following effect: "But the weight of modern opinion seems to be that personal disqualifications not arising from the law of nature but from the positive law of the country, and especially such as are of a penal nature, are strictly territorial, and cannot be enforced in any country other than that in which they originate. Accordingly it has been held, upon great consideration, that a conviction and sentence for a felony in one of the United States, did not render the party incompetent as a witness, in the courts of another state;

though it might be shown in diminution of the credit due to his testimony."

In Commonwealth v. Green, 17 Mass. 515, it was held that "the conviction of an infamous crime in a foreign country, or in any other of the United States, does not render the subject of such conviction an incompetent witness in the courts of this state," and Mr. Wigmore summaries the reasons assigned by the Massachusetts court for so holding as follows: "(1) The difficulty of raising an issue as to the record, (2) the diversity of ideas as to criminal conduct in different countries, (3) the hardship of disqualifying by old and forgotten offences in other lands, (4) the principle that penal laws have no effect beyond the jurisdiction; (5) the fact that infamy is a punishment as well as stigma on character."

In the case of Logan v. U. S., 144 U. S. 263, 12 S. Ct. 617, 630, 36 L. Ed. 429, the Supreme Court of the United States said: "At common law, and on general principles of jurisprudence, when not controlled by express statute giving effect within the state which enacts it to a conviction and sentence in another state, such conviction and sentence can have no effect, by way of penalty, or of personal disability or disqualification, beyond the limits of the state in which the judgment is rendered."

In the case of In re Ebbs, 150 N. C. 44, 63 S. E. 190, 194, 19 L. R. A. (N. S.) 892, 17 Ann. Cas. 592, the court had under consideration the question of the disbarment of an attorney on account of his conviction of forgery in the Circuit Court of the United States, Eastern District of Louisiana; the statute of North Carolina requiring that an attorney at law should be disbarred upon his being convicted of a crime punishable by imprisonment in the penitentiary. In discussing the question, the court said: "If any other interpretation were put upon our statute, it would logically follow that, for violation of the federal statutes or statutes of other states, citizens of this state would forfeit their right to vote

under our constitution. Certainly the people of North Carolina never contemplated that any such construction would be put upon their laws. . . . We are of the opinion that upon well-settled principles and sound reason the statute is confined to a conviction in this state.''

We are of the opinion that, in so far as the charge of disqualification on account of conviction of crime is concerned, the court below committed no error in excluding the evidence, but we think the evidence offered to show delinquency in the payment of taxes made a prima facie case which required an answer. The judgment of the court below will therefore be reversed, and the cause remanded.

Reversed and remanded.

**Smith, C. J.,** delivered a concurring opinion.

I concur in all that is said in the main opinion herein except the reason given for not applying the rule announced in Revenue Agent v. Clarke, 80 Miss. 134, 31 So. 216, 218, and Miller v. Citizens' National Bank, 144 Miss. 533, 110 So. 439, 440, that ''an assessment of property for taxation is conclusive . . . as against the taxpayer, that he is the owner, or taxable for the property shown on the roll.'' If the court was there called on to decide that question, its decision thereof would be controlling here.

In the Clarke case, the revenue agent sought to back assess solvent credits of Clarke to the amount of twenty thousand dollars, which he claimed had escaped taxation for the year 1900. The assessment roll for that year contained an assessment against Clarke of five thousand dollars of solvent credits. Clarke pleaded this assessment as res judicata of his solvent credits assessment for that year.

The question thus presented to the courts was set forth in its opinion as follows: ''The question is precisely this: Where a taxpayer actually has, say one hundred

thousand dollars of solvent credits, which are actually collectible for the full value, and he knows that fact, and so regards them, and intentionally undervalues them, by returning them, say, at five thousand dollars, as probably collectible, even supposing him to have sworn to his assessment, have not the ninety-five thousand dollars escaped taxation by reason of not having been assessed?''

In showing why this question should be answered in the affirmative, the court said that an assessment of property for taxation is conclusive of two things only: ''First, as against the taxpayer, that he is the owner, or taxable for the property shown on the roll; second, as against the taxpayer and the public, that the valuation of the enumerated property is as finally shown on the roll''—thereby bringing the case it had under consideration without the res judicata rule. The method there adopted of determining whether the given case was within or without the rule of res judicata was that of inclusion and exclusion, a perfectly legitimate method and one frequently adopted by the courts; but, in such cases, their opinions become authoritative within the rule of stare decisis only as to the questions actually presented to them for decision, and the only question presented in the Clarke case was whether Clarke owned property for which he had not been previously assessed.

In Miller v. Citizens' National Bank, the revenue agent sought to back assess the bank on the value of its shares of stock which he claimed had been undervalued in a prior assessment. This assessment was pleaded by the bank as res judicata, and the court, in sustaining the plea, reproduced the statement from the Clarke case as to the elements of which an assessment roll is res judicata. The second of these elements was the only one there involved and the only one on which the court could express an authoritative opinion.

There was no question in either of those cases as to whether an assessment is res judicata of the ownership of the property assessed, and courts are not bound by

any expressions appearing in their decisions upon uncontested points. Adams v. Yazoo & M. V. R. Co., 77 Miss. 194, 24 So. 200, 317, 28 So. 956, 60 L. R. A. 33.

These expressions of the court in the two cases as to the conclusiveness of the judgment roll on the question of the ownership of the property assessed were not obiter, but were in the nature of judicial dicta, and therefore are not within the strict rule of stare decisis; but they do show the ''views entertained by the court at that time'' are ''of persuasive force . . . .'' and should be followed unless found to be erroneous. Sprague v. Northern Pacific R. Co., 122 Wis. 509, 100 N. W. 842, 106 Am. St. Rep. 997; 15 C. J. 953; and State v. Tingle, 103 Miss. 672, 60 So. 728.