STATE EX REL. JESSE W. BARRETT, ALPHONSE G. EBERLE, A. SIDNEY JOHNSTON and WILLIAM J. BLESSE, Constituting and Comprising the Board of Election Commissioners of the City of St. Louis, Relators, v. EUGENE J. SARTORIUS, Judge of the Circuit Court of the City of St. Louis.—No. 38539.—175 S. W. (2d) 787.

Court en Banc, December 6, 1943.

*Joseph F. Holland,* City Counselor, and *George L. Stemmler,* First Associate City Counselor, for relators.

1240

HYDE, J.—Certiorari to review the order of the Circuit Court of the City of St. Louis requiring relators (Board of Election Commissioners) to permit C. L. Owen to be registered as a qualified voter.

Owen appealed to the Circuit Court, from the action of the Board in striking his name from the list of registered voters, under the provisions of Sec. 12221 (R. S. 1939) Mo. R. S. Ann. The Board so acted because Owen had entered a plea of guilty to an indictment for attempting to evade payment of income taxes to the United States. (Title 26, Sec. 145b, U. S. Code.) 26 U. S. C. A., Int. Rev. Code, Sec. 145(b). This offense is admitted to be a felony under the laws of the United States. Owen contended that he is nevertheless a qualified voter, because he has never been convicted of a felony under the laws of Missouri, and the Circuit Court so held. This is the only question in the case.

Section 2 of Article 8 of our Constitution authorizes "all citizens of the United States . . . over the age of twenty-one years . . . (who have met prescribed residence requirements) . . . to vote at all elections"; but provides that "persons convicted of felony, or crime connected with the exercise of the right of suffrage may be excluded by law from the [788] right of voting". (Adopted Feb. 26, 1924).

This is a broad grant of power in very general terms. There are no limitations in it which indicate an intention to require our General Assembly to restrict exclusion from the right of voting to those convicted of a felony under the laws of this state. Nor were there, in any previous Constitution authorizations, any such limitations upon the grant to the General Assembly of the power to exclude from the right of voting persons convicted of infamous crime—(The term "infamous crime" was used in all preceding constitutional provisions; see Sec. 10, Art. 8, Constitution of 1875; Sec. 26, Art. 2, Constitution of 1865; Sec. 14, Art. 3, Constitution of 1820.) The true purpose of such a disqualification is now generally conceded to be not merely additional punishment of the individual but to safeguard and preserve the purity of elections [18 Am. Jur. 230, Sec. 80; 29 C. J. S. 58, Sec. 33.] In other words, such provisions are for the protection of the public by permitting only those who have

lived up to certain minimum moral and legal standards (by not committing a crime classed as a felony) to exercise the high privilege of participating in government by voting. The opening line of present Sec. 2 of Art. 8 recognizes and in fact requires that all Missouri voters must be citizens of the United States and of course subject to its laws. We, therefore, hold that the General Assembly has authority under our Constitution to exclude from the right of voting persons convicted of a felony under the laws of the United States.

██ It is interesting to note how the General Assembly has exercised this power throughout the history of this state. At first, when any such disqualification was provided, the offense, punishment and disqualification (which also included disqualification from office, from being a juror and in some instances from "giving evidence") were all included in the same section of the criminal code. [R. S. 1825, Crimes and Misdemeanors—Chap. 1, Sec. 32 (stealing slaves), Sec. 33 (horse stealing), Sec. 46 (forgery), Sec. 47 (counterfeiting), Sec. 56 (perjury), Secs. 59-60 (bribery), Sec. 62 (buying office), Sec. 76 (bigamy)]. Thus such disqualification seems to have been then considered more as a part of the punishment and it was clearly applied only to the particular crime specified in the section of which it was a part. Under those circumstances, of course, it applied only to such crimes when committed in this state. In 1835, much of our present criminal code was adopted in substantially its present form. (R. S. 1835, pp. 165-217.) The last section, at the end of each article thereof, specified that any person convicted of any of the offenses described in that article, or in some instances (where the article covered misdemeanors) of certain specified offenses in that article, should "be forever disqualified from voting at any election" (also from holding office or serving as a juror), and these specific disqualifications still remain in our criminal code. [Offenses affecting lives and persons. R. S. 1835, p. 172—Art. 2, Sec. 42, now Sec. 4427 (R. S. 1939) Mo. R. S. Ann.; Offenses against property, R. S. 1835, p. 182, Art. 3, Sec. 62, now Sec. 4561 (R. S. 1939) Mo. R. S. Ann.; Offenses against records, currency, etc., R. S. 1835, p. 190, Art. 4, sec. 35, now Sec. 4601 (R. S. 1939) Mo. R. S. Ann.; Offenses against administration of justice, R. S. 1835, p. 196, Art. 5, sec. 44, now Sec. 4322 (R. S. 1939) Mo. R. S. Ann.; Offenses by persons in office, R. S. 1835, p. 200, Art. 6, sec. 18, see Sec. 4357 (R. S. 1939) Mo. R. S. Ann.; Other offenses R. S. 1835, p. 210, Art. 8, sec. 40, now Sec. 4796 (R. S. 1939) Mo. R. S. Ann.] Thus, by these specific provisions, every felony described in the criminal code of this state (necessarily committed in this state) seems to have been made a ground of disqualification for voting, as were some crimes not felonies. [An infamous crime was defined as "every offense, for which the offender . . . is declared to be disqualified . . . to vote," etc., R. S. 1835, p. 216, Art. 9, sec. 37, now Sec. 4865 (R. S. 1939) Mo. R. S. Ann.]

Therefore, if our legislature only intended disqualification for felonies committed in this state no further statutes would seem to have been required.

However, another statute was enacted after the adoption of the Constitution of 1875: our present statute on qualifications of voters [Sec. 11469 (R. S. 1939) Mo. R. S. Ann.; reenacted Laws 1939, p. 382] which uses the same broad language of the 1875 Constitutional grant of power to the General Assembly, namely: "Nor shall any person convicted of a felony . . . or of a misdemeanor connected with the exercise of the right of suffrage, be permitted to vote at any election unless he shall have been granted a full pardon." [This case is briefed mainly on the construction of [789] Sec. 12206 (R. S. 1939) Mo. R. S. Ann. applicable to registration of voters in St. Louis, but it must be decided on the construction of Sec. 11469 applicable to the whole state.] This section first appears as Sec. 5492, R. S. 1879, following the language of the Constitution of 1875 (Sec. 10, Art. 8) which authorized the General Assembly to provide for such disqualification in substantially the same language as the present Sec. 2, Art. 8. (Art. 8 was rewritten by the 1923 Constitutional Convention because of the 19th amendment to the United States Constitution and the 1922 amendment to our Constitution requiring voters to be United States citizens and removing the disqualification of officers, soldiers and marines of the regular army or navy of the United States.) Other disqualifications of both the statute and the constitution are in the same broad terms, namely: "No idiot, no insane person (does this mean only those declared insane by a Missouri court?) and no person while kept in *any* poorhouse . . . or while confined in *any* public prison shall be entitled to vote." (Would it be contended that an inmate of a federal prison in Missouri could vote?) Considering the purpose of the disqualification, the broad language of the constitutional authorization and the use of the same broad terms by the Legislature in enacting a general statute providing for such disqualification for felony, without limitation to exclude conviction for felony by a United States Court, after disqualifications had already existed in this state for almost half a century specifically covering crimes classed as felony under the laws of this state, it seems reasonable to believe that the Legislature did intend to include conviction for felony under United States laws in the disqualification.

The General Assembly has itself taken this view of the meaning of this disqualification, because it has in two separate statutes providing for registration in certain cities so construed it. [Sec. 12073 (R. S. 1939) Mo. R. S. Ann. making it a felony "If any person who shall have been convicted of bribery, felony, or other infamous crime, under the laws of any state, and who has never received a pardon for such offense from the officer entitled to grant such pardon, shall thereafter vote"; and Sec. 12264 (R. S. 1939) Mo. R. S. Ann., likewise

making it a felony "If any person who shall have been convicted of bribery, felony, or other infamous crime, under the laws of any state, or, of the United States, and who has never received a pardon for such offense from the officer entitled to grant such pardon, shall thereafter vote." While it is no doubt true, as respondent contends, that such an offense may be only created by general law applicable to the whole state [so that Sec. 4355 (R. S. 1939) Mo. R. S. Ann. would apply to offenses in these cities as well as anywhere else in this state], nevertheless these sections do furnish a legislative construction which should be at least persuasive.

Respondent argues that, because Sec. 4864 (R. S. 1939) Mo. R. S. Ann. defines "felony" as "any offense . . . punished with death or imprisonment in *the* penitentiary", the term "felony" in all election laws is limited to such offenses as may be punished by imprisonment in the Missouri penitentiary. Even if we accept such a narrow construction, we must consider that this section was a part of the 1835 criminal code (R. S. 1835, p. 216, art. 9, sec. 36), and obviously referred to the use of the term in that code. Anyhow this definition could not alone settle the construction of future amendments to the Constitution. Moreover, the very article, of which it is a part, discloses a legislative policy of permitting convictions in other jurisdictions to influence the operation of Missouri laws. Sec. 4854 (R. S. 1939) Mo. R. S. Ann. provides mandatory maximum punishment for those, who after one conviction, commit subsequent offenses punishable by imprisonment in the penitentiary. Sec. 4855 (R. S. 1939) Mo. R. S. Ann. requires such punishment for "every person who shall have been convicted in any of the United States, or in any district or territory thereof, or in a foreign country, of an offense which, if committed in this state, would be punishable by the laws of this state by imprisonment in the penitentiary, . . ." These sections were Sections 7 and 8 of Art. 9, R. S. 1835. (R. S. 1835, pp. 212-213.) The case of Presbury v. Hull, 34 Mo. 29, cited by respondent was decided before the adoption of the 1879 statute and did not involve the right to vote. It construed the effect of the statute suspending civil rights of persons sentenced to a penitentiary term of less than life, upon contractual obligations. [Sec. 9225 (R. S. 1939) Mo. R. S. Ann.] Respondent relies on cases, such as Commonwealth v. Green, 16 Mass. 515, on disqualification of witnesses. The question in such cases involves the matter of suppressing evidence, [790] which could be the only available evidence. Our policy on this is that "any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility . . . " [Sec. 1916 (R. S. 1939) Mo. R. S. Ann.] Certainly it would not be reasonable to say that the credibility of a witness could only be affected by a conviction in a Missouri court. [See State v. Clement (Mo. App.), 183 S. W. 1133.]

Fitness to exercise the right of suffrage is a similar matter. We, therefore, rule that anyone convicted for felony under United States laws is excluded from the right of voting in this state.

Additional reasons and authorities for so holding, as well as the arguments and authorities supporting the contrary view, are well stated in State ex rel. Olson v. Langer (N. D.), 256 N. W. 377, construing the voter's disqualification section of the North Dakota Constitution using similar broad general terms. [See also Irby v. Day (Ark.), 32 S. W. (2d) 157; State v. Irby (Ark.), 81 S. W. (2d) 419; Arnett v. Stumbo (Ky.), 153 S. W. (2d) 889.] We quote and adopt from the Langer case the following:

''No one can lawfully vote under any government of laws except those who are expressly authorized by law. It is well settled, therefore, under our form of government, that the right is one conferred by constitutions and statutes, and is the subject of exclusive regulation by the State, limited only by the provisions of the Fifteenth Amendment to the Federal Constitution, which prohibits any discrimination on account of 'race, color, or previous condition of servitude.' . . . The right is also denied almost universally to idiots, insane persons, and minors, upon the ground that they lack the requisite judgment and discretion which fit them for its exercise. It has never been considered that any of these disqualifications were imposed as a punishment, and no one has thought to view them as even in the nature of a penalty. The same may be asserted as to the exclusion of unnaturalized citizens who are disqualified on the ground of alienage, and of paupers, to whom some States deny the right upon principles of State policy. It is quite common also to deny the right of suffrage, in the various American States, to such as have been convicted of infamous crimes. The manifest purpose is to preserve the purity of the ballot box, which is the only sure foundation of republican liberty, and which needs protection against the invasion of corruption, just as much as against that of ignorance, incapacity, or tyranny. The evil infection of the one is not more fatal than that of the other. . . . It seems to us unthinkable, in view of the purpose underlying section 127, as amended, and the inter-relationship between the state and the United States, that an elector who has committed the most serious of offenses—for example, treason, or murder, or robbery—and who has been convicted therefor in the federal court, should not be disqualified to exercise the elective franchise in North Dakota where the offense was committed. Neither can the fact that the offense of which the respondent in the instant case was convicted may by some be considered as not a serious one make any difference in the application of the rule. The constitutional provision establishes a rule for all cases, and in its application the merits of any individual case cannot be considered. . . . Acts constituting felony may differ in different jurisdiction. Statutes simply embody the

standard established by the public conscience in those jurisdictions where they are enacted. Public sentiment may vary and standards change accordingly. But he who violates the statute must be held to know what he is doing when he does the prohibited act and to know the consequence in the way of penalty. His personal standard cannot be the measure of the character of the act or its depravity. The standard established by the lawmaking body of that jurisdiction must do that. [Citing cases.] Accordingly, he who sets himself above the law and does an act, regarded by the United States as of so serious a nature as to be prohibited and penalized as a felony, may well be held in this state to be unfit to participate in governmental affairs."

The record of the Circuit Court of the City of St. Louis herein is quashed. *Gantt, Tipton, JJ., Douglas, C. J.,* concur; *Ellison, J.,* concurs in result only in separate opinion; *Leedy, J.,* and *Clark, J.,* concur in result only and in separate opinion of *Ellison, J.*

 ELLISON, J. (concurring).—I concur in the result. The cause is submitted by respondent's return solely on the legal theory that the phrase "convicted of a felony" appearing in Sec. 2, Art. VIII of the Constitution, and Sec. 11469[1], refers only to convictions in *Missouri* courts of felonies under the laws of Missouri and *committed in Missouri.* Respondent's ruling below was, that since voter Owens had not been convicted in a Missouri court, but in the Federal court, of a felony (evading payment of income tax) under the laws of the United States, not the State of Missouri, therefore the Board of Election Commissioners had no power under Sec. 11469, supra, to strike his name from the registry of qualified voters. The principal opinion holds against that restrictive contention, and to that general ruling I agree. But I do not agree to the sweeping conclusion that the constitutional provision and statute, supra, refer to *any* felony under the laws of any other jurisdiction, regardless of whether the same act would be a felony or any crime at all, if committed in Missouri. As a matter of fact, evasion of payment of state income tax in Missouri is only a misdemeanor. Secs. 11371, 11372.

Respondent has cited considerable authority which seemingly supports his narrower view.[2] But many of these cases deal with disqualification to hold office, or for jury service, or as a witness, because of prior conviction of a felony in another jurisdiction. These may be distinguishable; at least let that be conceded. And let it be further

[1] All references to our Statutes are to the Revision of 1939 and same section numbers in Mo. R. S. A., unless otherwise noted.

[2] 2 Univ. Chicago Law Review, p. 333 et seq.; Wigmore on Evid. (3 Ed.), sec. 522, p. 615; Jones Commentaries on Evid. (2 Ed.) Rev., 1926), sec. 2098, p. 3834; State ex rel. Olson v. Langer, 65 N. D. 68, 101, 109-110, 256 N. W. 377, 392, 395-6; State ex rel. Mitchell v. McDonald, 164 Miss. 405, 145 So. 508, 86 A. L. R. 290, 297; U. S. v. Barnabo (U. S. C. Ct.), 14 Blatchford, 74, 79.

conceded, as the principal opinion holds, that the purpose of a statutory disqualification to vote because of a prior conviction of a felony, is imposed to safeguard the purity of elections and to fix minimum moral standards for voters. But granting that, is it not *this* State which prescribes the moral qualifications of *its* voters, and not one of the forty-seven other States, or the Federal Government? Have we by the constitutional and statutory provisions aforesaid turned over to those other jurisdictions the power to impose conditions of disfranchisement upon our voters, or put it in the hands of the governor of some other state to reinstate them by a pardon for a crime committed there?

Answering respondent's restrictive contention, the relator members of the Election Board in their reply brief very pertinently inquire whether it can be said "with any semblance of reason or logic, that (the people) intended that one guilty of a 'Missouri felony' should be *disqualified,* but that one guilty of an equally reprehensible act under the laws of another jurisdiction should remain *qualified?*" Another case, Crampton v. O'Mara, 193 Ind. 551, 557 (5), 139 N. E. 360, 362 (4) declares such a course would be "anomalous, illogical, and unjust." But turn that proposition around and look at the converse of it. Would it not be equally unjust and discriminatory to deny a citizen of this state the right to vote because he had previously been convicted of an unpardoned crime in another state, which that state had denominated a felony, while at the same time other citizens of Missouri were doing the same thing every day in our very presence, and yet voting without hindrance because the act is only a misdemeanor, or not a criminal offense at all, in Missouri?

True, it could be said of the disfranchised voter that he had violated the law of the foreign state where he was when he committed the act, but it seems to me if the purpose of the disqualification is to fix the *moral* standards of voters, then this state and no other is the one to say what those standards shall be. The principal opinion quotes an excerpt from the Langer case, supra, decided in North Dakota, which says it makes no difference in the application of the rule that moral views may differ in the several jurisdictions and that an act may be treated as a serious offense in one and not in another. But this would result in disqualification of a voter for violation of the blue laws of any other states that still have them; and even of the penal laws of foreign countries which are wholly unknown here—if our statute includes those jurisdictions. And it would further result that a voter could be disfranchised [792] who is morally blameless according to our own standards; or, on the other hand, that he could evade payment of his Missouri income tax with impunity, whereas he would be denied the right to vote if he evades payment of his Federal income tax. In other words, to secure equal treatment for all voters our laws would have to parallel the Federal laws.

The Langer case further says it would be "unthinkable" to affirm that one who had committed treason, murder or robbery in North Dakota and been convicted of the crime in the Federal Court, should not be disqualified as a voter in that state. This is quite true, of course, if those crimes are felonies in North Dakota, as we assume they are. But the fact that the crime had been committed in a federal jurisdiction overlapping the state, otherwise would not make it an offense against the state of North Dakota anymore than if it had been committed in a wholly different state. The court systems, laws and rights of franchise of the two jurisdictions would be wholly different and separate.

The Langer case evidently was decided under some political stress. The proceeding there was in quo warranto (not by impeachment) to oust the respondent from the office of governor of North Dakota, because he had during his tenure been convicted of a felonious conspiracy to defraud the United States by corruptly administering the Emergency Relief Acts of Congress. The offense would have been only a misdemeanor under the state law. The theory of the action was that by conviction of the federal felony the respondent there became disqualified to serve as governor, since the constitution of the state required him to be a qualified elector and he had lost the right to vote. The decision ousted him, but he was reelected governor two years later and is now the United States senator from that state. There was a strong dissenting opinion, and the case has been ably reviewed in 2 University of Chicago Law Review, supra, loc. cit. 334, where it is said (italics ours): "The court might well have required the conviction to be for a felony within the state, *or at least for an act which is considered a felony by local law.*"

The italicized part of the above quotation states the true rule which should apply here, in my opinion. If, as the relators and the above cases reason, it is unthinkable that a person convicted of a Missouri felony in Missouri should be disqualified, whereas one guilty of an equally reprehensible act under the laws of another state is not disqualified, that is simply another way of saying in reverse that the outstate felony ought to be of the same kind and nature as the Missouri felony. And we apply that rule even as to common criminals in our habitual criminal statute, Sec. 4855. It reaches not only to the other states of this Union but to foreign countries. If the second offender has previously been convicted in those outside jurisdictions (italics ours), "of an offense which, *if committed in this state,* would be punishable" as a felony then the maximum punishment can be assessed, but not otherwise. Such a criminal cannot be subjected to the aggravated punishment merely because he has committed a (any) felony in another jurisdiction. It seems to me the constitutional provision and statute, supra, can hardly be construed to intend harsher treatment to a voter than to a second offending felon.

I respectfully submit that the proper construction of Section 2, Article 8 of the Constitution and Section 11469 is that the voter to be disqualified must have been convicted of a felony in this state or of a felony in another jurisdiction which would also be a felony if it had been committed in Missouri. No such situation exists in the instant case. This conclusion, if adopted, cannot help the voter here because the issue was not raised by the parties either here or below. But the question ought to be decided, or at least not ruled the other way, because of the effect it may have on the voter's future rights and course. *Leedy* and *Clark, JJ.*, concur.