**MARIO C. MOORHEAD, Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS and
HENRITA TODMAN, SUPERVISOR OF ELECTIONS,
Defendants**

Civil No. 916/1982

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

November 12, 1982

FRANK FORD, III, ESQ., Frederiksted, St. Croix, V.I., *for plaintiff*

RICHARD R. KNOEPFEL, ESQ., Department of Law, St. Thomas, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

Because this was a case of first impression and because of its importance to the community at large and the Court's continuing desire to establish, with clarity, the law of this jurisdiction, it announced its intention at the conclusion of the trial to reduce its holding to writing as a supplement to its oral decision rendered from the bench. This memorandum opinion constitutes that writing.

The matter came before the Court on plaintiff's petition and motion for a temporary restraining order and for declaratory relief with respect to plaintiff's eligibility to hold office. Counsel for all parties stipulated that trial on the application for temporary restraining order, preliminary injunctive relief and final hearing would be held simultaneously.[1]

The Court having read and considered the pleadings filed herein and having heard and considered the stipulations and arguments of counsel, for the reasons hereinafter articulated, denied plaintiff's motion for relief and dismissed his petition.

## THE FACTS

Plaintiff, Mario C. Moorhead (hereinafter "Moorhead") alleges that he filed, with the Office of the Supervisor of Elections on August 26, 1982, several nominating petitions along with other required documents which were examined and accepted by that Office without objection as to sufficiency. On October 7, 1982, defendant Henrita Todman wrote plaintiff informing him that October 13th had been set as the date for "casting of lots" for candidates' position on the ballots for the upcoming General Election to be held on November 2, 1982. On October 13th, minutes before the "casting of lots" was to begin, defendant Todman presented Moorhead

---

[1] Had not both counsel stipulated to such simultaneous hearing, this Court would have certified its interlocutory order for appeal to the District Court for immediate disposition. See Sheen v. Continental Insurance Co., Civil No. 82-142, 1982 St. Croix (D.V.I. July 8, 1982).

with a letter signed by the Attorney General of the Virgin Islands indicating that he, Moorhead, did not meet the qualifications to hold the office which he was seeking and that his name would therefore be deleted from the ballot. As a result Moorhead was not permitted to cast for a position on the ballot.

On October 13, 1982, Moorhead wrote a letter to the Presiding Judge of the Territorial Court[2] which was forwarded to the Territorial Court of the Virgin Islands, Division of St. Croix, with directions that it be treated as a petition for a temporary and permanent injunction requiring plaintiff's name to be listed on the ballot and declaring his eligibility to serve as a Senator if elected. On October 19, 1982, Moorhead filed an amended complaint, more specifically requesting declaratory and injunctive relief, and in addition moved for a temporary restraining order requiring the restoration of his name on the ballot. Trial was held on October 21, 1982, at which time it was stipulated that plaintiff had been convicted of a felony and had not received a "formal pardon".[3]

There are two basic questions before the Court. The *first* is whether a convicted felon is barred from running for public office absent a formal pardon from an appropriate official. The *second* is whether 18 V.I.C. § 412, and the time limits stated therein, are applicable to the Supervisor of Elections and the Government of the Virgin Islands.

## DISCUSSION

### I

■ Section 6(b) of The Revised Organic Act of the Virgin Islands (1954) outlines the eligibility qualifications of candidates for the Virgin Islands Legislature. It reads in pertinent part:

(b) No person shall be eligible to be a member of the legislature . . . who has been *convicted of a felony* . . . and *has not received a pardon* restoring his civil rights. (Emphasis added.)[4]

---

[2] Plaintiff in his letter contended that 18 V.I.C. § 263(b) restored the last of his civil rights when he became eligible to vote in May 1978.

[3] Plaintiff initially contended that he did receive a "pardon" by virtue of 14 V.I.C. § 91. Counsel for plaintiff termed such pardon a "legislative pardon", however, counsel finally conceded that plaintiff had not received a formal pardon from the Governor of the Virgin Islands and so stipulated. The conviction was for a felony committed in the District of Columbia.

[4] There is no question that subject to constitutional restrictions, it is permissible for a local legislature to prescribe eligibility qualifications for one who desires to become a candidate for public office. 63 Am.Jur.2d Public Officers, § 39 (1966).

Moorhead contends, however, that by operation of 14 V.I.C. § 91, he has received restoration of his civil rights. He argues that this restoration is, in effect, a "pardon" thereby restoring all of his civil rights including the right to hold office. Section 91 provides:

> A sentence of imprisonment for any term of more than one year and less than for life suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority or power during such imprisonment.

This section must, however, be read in conjunction with 14 V.I.C. § 92 which provides:

> Whoever is sentenced to imprisonment for life is thereafter deemed civilly dead.

Thus under our statutory scheme, section 91 indicates that an individual's civil rights, among other things, are suspended during the time of imprisonment. It is only in cases of life imprisonment that an individual *permanently* loses *all* civil rights. Based on 14 V.I.C. § 91, Moorhead contends that since he has completed his term of imprisonment, *all* his civil rights have been restored and therefore he can now run for and hold office. However, while both sections speak to the *suspension* of civil rights, neither specifically grants plaintiff a "pardon" or the right to hold public office.

■ Moorhead also relies on 18 V.I.C. § 263(b) contending that since he has re-acquired the right to vote pursuant to said section, he also has been restored the right to hold public office. In view of the fact that 14 V.I.C. § 91 (derived from the Municipal Codes of 1921) preceded in enactment 18 V.I.C. § 263(b) (added in 1963), it (section 263(b)) supersedes the former statute (14 V.I.C. § 91). It is presumed that the legislature was aware of the existence of 14 V.I.C. § 91 when it enacted 18 V.I.C. § 263(b) and of the facial inconsistency exhibited in these statutes. Accordingly, it must be presumed that by enactment of 18 V.I.C. § 263(b) the legislature repealed 14 V.I.C. § 91 by implication, at least insofar as the right to hold office is concerned. The Court is quick to point out that section 263(b) speaks *only* to the right to vote and is silent on the question of the right to hold public office. These rights are not synonymous but are distin-

---

25 Am.Jur.2d Elections §§ 6, 175 (1966); 29 C.J.S. Elections § 58. See generally Annot., 34 A.L.R.2d 155 (1954).

guishable, and to a certain extent separate and independent of each other in regard to qualifications.[5]

■ Having concluded that neither 14 V.I.C. § 91 nor 18 V.I.C. § 263(b) *specifically* gives plaintiff the right to hold public office, we now turn to the question of whether the plaintiff has received a pardon. A pardon is defined in BLACK'S LAW DICTIONARY (rev. 4th ed.) as follows:

> An act of grace, proceeding from the power intrusted with the execution of the laws, *which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed.*

In our jurisdiction the power to grant a pardon is vested in the executive branch. Section 11 of the Revised Organic Act of the Virgin Islands (1954) vests the executive power of the Virgin Islands in the Governor of the Virgin Islands. Included in the executive power is the power to grant pardons. Section 11 reads in pertinent part:

> The executive power of the Virgin Islands shall be vested in an executive officer whose official title shall be the "Governor of the Virgin Islands".
>
> . . . .
>
> The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of the Virgin Islands. He may *grant pardons* and reprieves and remit fines and forfeitures *for offenses against local laws.* (Emphasis added.)

In the instant case the felony of which Moorhead was convicted was committed in the District of Columbia.[6] Section 11 grants the Gov-

---

[5] The only salient connection lies in the fact that a majority of jurisdictions, including this one, require a potential candidate for public office to be a qualified voter. See 25 Am.Jur.2d Elections § 177. However the issue is not relevant in this case in that plaintiff is a qualified voter and thus this specific poses no obstacle to his right to hold public office.

[6] There is no issue before the Court as to whether a conviction of a felony in a foreign jurisdiction would bar an individual from holding office in the Virgin Islands. A majority of the jurisdictions which have considered this question have held that the term conviction when used in specific disability provisions includes a foreign conviction. See The Collateral Consequences of a Criminal Conviction, 23 Vand. L. Rev. 929, 961 n.145 (1970) and the cases cited therein. Section 6(b) speaks of a felony conviction generally, and is silent as to whether the felony must be construed as such in the Virgin Islands. See Crampton v. O'Mara, 193 Ind. 551, 139 N.E. 360, *error dismissed,* 267 U.S. 575 (1921), the court held that conviction of a felony in a sister state would render the person ineligible to hold public office

ernor the power to grant pardons *only* for offenses against local laws. Therefore, even if the Governor were disposed to offer plaintiff a pardon, it appears he could not grant such a pardon.[7] Moorhead, were he to seek a pardon, would have to obtain same from the appropriate official in the jurisdiction in which the crime for which he was convicted was committed.

Moorhead has also argued that Congress, by passage of Pub. L. No. 94–584, 90 Stat. § 2809 (1976) has enabled the people of the Virgin Islands to modify the Revised Organic Act of the Virgin Islands (1954) by passage of a local constitution. He asserts that as a result, a Fourth Proposed Constitution was accepted by the Fourth Constitutional Convention, which was convened for that purpose, and that the same was approved by Congress and the President of the United States pursuant to Public Law No. 94–584 for submission to the people of the Virgin Islands for approval by referendum.[8] In the Fourth Proposed Constitution there is no provision which speaks to *membership or non-membership* in the legislature by persons convicted of a felony.[9] Plaintiff alleges that this is so because in the Bill of Rights, art. 5, § 6 of the Fourth Proposed Constitution, it is clearly stated that one convicted of a crime shall have his civil rights restored upon completion of his sentence. Assuming arguendo, that all of what plaintiff states is true, it nevertheless does not change the status of this case because whatever the content of the Fourth Proposed Constitution, it does not obviate the controlling fact that it has

---

in their state. But, see, State ex rel. Mitchell v. McDonald, 164 Miss. 405, 145 So. 508 (1933), where the Court held that a conviction of a felony in another state would not disqualify the person from holding office in Mississippi. See generally Annot., 39 A.L.R.3d 303 (1971). Finally, there is some authority that the question to be considered is whether the crime committed in the other jurisdiction would be considered a felony in the jurisdiction in which the individual is seeking to run for public office. This is a result of the fact that a conviction in federal courts for crimes that were felonies under federal laws but only misdemeanors under state law do not disqualify him from political candidacy for public office. 25 Am.Jur.2d Elections § 177.

[7] There is some law which holds that if the crime was a federal one, a pardon by the governor is sufficient to restore the person's right to vote and hold office under state law. See Annot., 39 A.L.R.3d 303 (1971). However in the instant case there is no evidence of a pardon being granted by *any* official, and thus the Court has no need to determine the validity, in the context of the question here presented, of such an act by the Governor of the Virgin Islands.

[8] The proposed Constitution was rejected at a referendum election. While plaintiff argued that that fact is not "germane" to the issue at hand, the Court is constrained to construe that fact to be conclusive.

[9] See Proposed Fourth Constitution, Art. 5, § 4.

not as yet been enacted into law, and therefore, has no force or effect.[10]

## II

■ Moorhead further argues that defendant Henrita Todman's untimely objection to plaintiff's candidacy was not in accordance with 18 V.I.C. § 412,[11] and therefore she, as Supervisor of Elections, is now estopped to disqualify him or remove his name from the ballot. Section 412 must be read in conjunction with 18 V.I.C. § 411[12] which is referred to in the text of section 412. Section 411 outlines the duties of defendant Todman in her capacity as Supervisor of Elections in regard to the examination of the nomination petitions, papers and certificates, and necessary action should any defects in said nomination material be present. It provides that if the Supervisor determines that a candidate for election or nomination does not meet the qualifications, then she shall disqualify such candidate and delete his name from the ballot if the *ballots have not been printed*.[13] Section 411 also requires the Supervisor to notify a candidate immediately by special messenger if any of his nomination material

---

[10] It is axiomatic that *proposed laws* are not controlling in a judicial proceeding. In addition whether the law is wrong or right it is the function of the Court to *interpret* the laws and make judgments as to their wisdom; that is the proper function and province of the legislature.

[11] 18 V.I.C. § 412 reads in pertinent part:

All nomination petitions and nomination papers received and filed under this chapter, and accepted after the examination required by section 411 of this title, shall be deemed to be valid, unless, within five days after the last day for filing such nomination petition or papers, a petition is presented to the district court, specifically setting forth the objections thereto, and praying that such petition or paper be set aside.

[12] 18 V.I.C. § 411 reads in pertinent part:

(a) The Supervisor of Elections or his deputy shall forthwith examine the nomination petitions, nomination papers or nomination certificates filed with him under this chapter and shall permit them to be examined by any interested citizen.

(b) If the Supervisor determines that a candidate for election or nomination does not meet the qualifications established by law for the office, then he shall disqualify such candidate and delete the candidate's name from the ballot if the ballots have not been printed.

(c) When nomination petition, nomination paper or nomination certificate is found to be defective the candidate shall be notified immediately by special messenger with the reason or reasons therefor. If a new, valid petition, paper or certificate is not filed within three days thereafter the candidate shall be disqualified for nomination or election.

[13] At the time of the hearing the ballots were at the printer but because of a steelworkers strike they had not yet been printed.

is defective along with the reason or reasons for the defect. In view of the fact that plaintiff submitted his material in late August and he was not notified of any defects in said material until the 11th hour, it would appear that defendant Todman failed to timely inspect the nomination material and properly notify the plaintiff.[14] That failure is frankly inexcusable. Despite this fact, the acts of defendant Todman do *not* give Moorhead the right to hold public office.[15] Plaintiff, however, relies on the language of 18 V.I.C. § 412 to support his estoppel argument. Specifically section 412 provides that all nomination material received, filed, and "accepted after the examination required by section 411 of this title, shall be deemed to be valid, unless, within five days[16] after the last day for filing" such material, a petition is presented to the district court setting forth any objections to the material and praying that such be set aside. Section 412 speaks *not* to the Supervisor of Elections but to the public at large. See Williams v. Todman, 5 V.I. 644, 367 F.2d 1009 (3d Cir. 1966). It affords an *interested citizen* the opportunity to timely object to a candidate's petition or papers.[17] Section 412 allows objection *after* examination pursuant to section 411(b), and if no such proper objection is made within the time period, the nomination petition or paper is then deemed valid. Nothing in section 412 or section 411 indicates that the mechanism provided for in section 412 is directly applicable to the Supervisor of Elections, defendant Todman.

---

[14] There is no evidence as to when defendant Todman became aware of the defect in Plaintiff's nomination material. However, the material was submitted early enough to afford defendant Todman an opportunity to inspect it and determine its sufficiency. Furthermore, notification minutes before the "casting of ballots" most assuredly is not adequate as it would effectively preclude a candidate from having an opportunity to correct, if possible, any defects in his nomination material.

[15] The ineligibility of a candidate for office because of lack of qualification therefore can never be rectified by the acts or failures to act of an official charged with the responsibility to certify qualification.

[16] Plaintiff argues that the Government of the Virgin Islands and Henrita Todman are barred from deleting his name based on this five day "statute of limitation".

[17] Even if section 412 were applicable it is clear that in the absence of an express waiver of its immunity, the Government of the Virgin Islands is not bound by the general statute of limitations. The Territory of the Virgin Islands is a body politic. While not sovereign, in the true sense of that term, the Revised Organic Act has conferred upon it attributes of autonomy similar to those of a sovereign government or a state. Accordingly, the general principle that claims of the sovereign are not subject to the defenses of laches and the statute of limitations is applicable to the Territory, unless expressly waived, and is implied in all its enactments. In re Hooper's Estate, 5 V.I. 518, 359 F.2d 569 (3d Cir. 1966).

244

Finally, Moorhead argues that in view of the lateness of defendant Todman's action, the Court as a matter of due process and fairness should direct Todman to reinstate plaintiff's name to the election ballot, with a full hearing to be conducted within the next thirty (30) days.[18] This Court holds that such an act would distort the election process. The issue contrasts the right of the individual to run for office with the right of electors to exercise their franchise. On balance, a distortion of the election process in the case at bar would be of such magnitude that given the present facts and circumstances, it would outweigh the propriety of this Court taking a position other than one which assuredly maintains the integrity of the election process and preserves the rights of the electors. It is for the reasons enumerated above that Moorhead's petition and motion for temporary restraining order and a preliminary and permanent injunction was DENIED.

■

---

[18] Moorhead suggests that in the event his candidacy is successful but he is found unqualified to hold office in this litigation, the candidate having received the next highest total of votes would be declared elected. However, this suggestion begs the question. By allowing an unqualified voter's name to appear on the ballot, those individuals who might cast a vote for him would be effectively disenfranchised. Furthermore, the votes cast for other eligible candidates would be diluted since they or any of them might readily have received Moorhead's votes were the electorate aware of his lack of qualification.