# Staunton

## W. A. FLETCHER V. COMMONWEALTH OF VIRGINIA.

September 20, 1934.

Present, All the Justices.

The opinion states the case.

*Williams & Farrier* and *S. B. Campbell*, for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

W. A. Fletcher was jointly indicted with McKinley Smith and tried under an indictment charging him with unlawfully and feloniously breaking into and entering a certain storehouse, the property of Mrs. Martha Thompson, and stealing wheat therefrom of the value of $70. The jury found him guilty of grand larceny and fixed his punishment at one year in the penitentiary. The trial court overruled a motion for a new trial and sentenced accused in accordance with the verdict.

From the standpoint of the Commonwealth, the evidence showed, or tended to show, the following facts:

The accused and his father are residents of Giles county, Virginia, the father owning a farm of approximately 400 acres. The accused was the owner of a Chevrolet truck, and together with Smith, had driven from Giles county to Wythe county the day preceding the theft of the wheat. Smith was a brother-in-law of Leonard Thompson, a part owner of the wheat and familiar with conditions at the Thompson farm. Fletcher and Smith, with two persons, were seen at Linberry's filling station, about six miles from the Thompson place, at six o'clock p. m. They ate supper, purchased gas and proceeded in the direction of Wytheville. In a short time thereafter a truck returned from the direction of Wytheville, passed the filling station and went in the direction of the Thompson home. Some time between seven and eight o'clock, p. m., Edwin Carter, a witness for the Commonwealth, observed a truck parked on a hill near the Thompson farm.

Leonard Thompson testified that he was at home on the night of the 12th of November and was at his granary about four or five o'clock that afternoon, and when he left the granary he locked the door. He further testified that he missed the wheat out of the granary on Friday morning and that he estimated his loss at ninety-three or ninety-four bushels. The granary door was open, wheat was spilled all around outside, the catch on the lock had been broken, and he found a sack inside of the granary and observed the tracks of a truck. "These tracks showed five Diamond tires and one half-moon tire, double tires on rear and single tires on front. * * * The left-hand hind wheel on the outside had the half-moon tire." Thompson went to Wytheville that morning, reported the crime to the sheriff, and went the next day to Giles county. Having ascertained that W. A. Fletcher had sold some wheat to H. M. Kingrea, he went to Fletcher's house and there saw a truck with tires corresponding to the track made by the truck at his granary. The truck was a Chevrolet with high stake bed, and sacks and "cleanings" of wheat were in the truck, and some of

the sacks in the truck were of the same kind as the sack he found in the granary.

Mr. Kincer, the sheriff of Wythe county, also testified as to the tracks made by a truck at the Thompson place.

H. M. Kingrea testified that he bought ninety and a fraction bushels of wheat from accused on Friday morning, November 13, and paid therefor the sum of $66.06.

The accused interposed the defense of an alibi and introduced a number of disinterested witnesses who testified that they saw accused in Giles county, remote from the Thompson place, at approximately the time a truck was seen in Wythe county near Thompson's farm.

Accused admitted that he was in Wythe county with Smith on November 12th, and gave as his reason for having been there, that he was at the time, and had been for a long period prior thereto, engaged in the produce business and was there for purposes connected with his business.

In addition to the defense of an alibi, accused, in support of his plea of not guilty, testified that the wheat he delivered to Kingrea was wheat Kingrea had bought from George E. Fletcher, his father. He was corroborated in that respect by his father and brother-in-law, one Guinnell. Accused further testified that as soon as he heard a warrant had been issued for his arrest that he voluntarily surrendered.

The first assignment of error challenges the action of the court in excluding from the jury alleged material evidence.

H. M. Kingrea, the purchaser of the wheat from accused on November 13th, was asked this question: "Please state whether or not Mr. G. E. Fletcher, the father of W. A. Fletcher, had contracted to sell you approximately 100 bushels of wheat, and had talked to you about it two or three times before this wheat was delivered to you."

The question was objected to by the attorney for the Commonwealth, and the objection sustained.

The defendant avowed that the witness would have answered the question as follows:

"Mr. G. E. Fletcher saw me twice in regard to this wheat

and told me that he would have some wheat to sell; that he didn't know exactly, but thought he would have about 100 bushels of wheat which he wanted to sell, and that if I would take it he would send it to me as soon as the price went up. I didn't take it the first time we talked and he then talked to me about storing the wheat in the mill. I had another talk with Mr. Fletcher and he told me that he was ready to sell the wheat and would send it over by his son, Bill Fletcher, the defendant in this case, and that he would get some sacks from me before sending the wheat. I agreed to take the wheat at the market price. A few days after this, Bill, the defendant, came and got the sacks, and on the 13th of November, a day or two thereafter, brought me the wheat. I weighed the wheat up and paid something over $50 for it."

■ The case of the Commonwealth is based primarily on the proposition that the wheat alleged to have been stolen by the accused was sold to Kingrea for the sum of $66.06. Unless the wheat stolen has been sufficiently identified as the wheat sold to Kingrea, there is no proof in this case of the value of the wheat. To constitute grand larceny, the value of the goods stolen must be of the value of $50 or more. Having permitted the Commonwealth to show that ninety and a fraction bushels of wheat had been sold to Kingrea, it was error to refuse to permit the accused to show by Kingrea, a disinterested witness, that he (Kingrea) had contracted with George Fletcher for approximately the amount of wheat delivered. In no sense was the evidence offered self-serving, unless it could be shown by the Commonwealth that a conspiracy existed between the accused and his father prior to the alleged theft of the wheat.

The assignment is well founded and constitutes reversible error.

■ The second assignment of error is that the court erred in allowing the Commonwealth to introduce a record showing that accused had been convicted of a felony.

On cross-examination the accused was asked if he had ever been convicted of a felony, and replied that he had not,

but had been convicted of a misdemeanor. Thereupon, over the objection of the accused, the court permitted the Commonwealth to introduce a record from the clerk's office of Giles county, showing that accused had been convicted of unlawfully shooting at an automobile (the property of L. S. Williams), the said automobile being then and there occupied by passengers. It is the contention of counsel for accused that the accused was only convicted of a misdemeanor, and therefore he could not be impeached by proof of such conviction.

There is no merit in this contention. The indictment under which accused was convicted was drawn under section 4473 of the Code, as amended by Acts 1926, chapter 342. That section provides that if the act done be done maliciously, the punishment prescribed is confinement in the penitentiary not less than two nor more than ten years. If the act done is committed unlawfully but not maliciously, the accused may be confined in the penitentiary not less than one nor more than three years, or, in the discretion of the jury, by confinement in jail not exceeding twelve months and by a fine of not less than one hundred nor more than five hundred dollars. The punishment of the accused was fixed by confinement in jail and by fine.

Section 3879 of the Code of 1887, Code of 1919, section 4758, provides: "Such offenses as are *punishable* with death or confinement in the penitentiary are felonies; all other offenses are misdemeanors." (Italics supplied.)

In *Benton's Case,* 89 Va. 570, 16 S. E. 725, this court construing that section, held that a felony is an offense which may be—not must be—punished by death or confinement in the penitentiary.

In *Forbes* v. *Commonwealth,* 90 Va. 550, 19 S. E. 164, the doctrine laid down in the *Benton Case, supra,* was followed, the court holding that a person convicted of unlawful shooting is guilty of a felony, though the punishment imposed is a fine and confinement in jail.

In *Quillin's Case,* 105 Va. 874, 54 S. E. 333, 336, 8 Ann.

Cas. 818, the doctrine of the *Benton* and *Forbes Cases* was approved, Judge Whittle saying:

"The doctrine is fully sustained by Professor Minor. 'In quite a number of cases our Virginia statutes submit it to the discretion of the jury whether an offense shall be punished with confinement in the penitentiary or in jail, or by fine only; and in those cases it may be a question whether the act is a felony or a misdemeanor. The doctrine seems clearly established that in such cases, *whatever may be the verdict of the jury,* the offense is always to be deemed a felony.'" See authorities cited.

The action of the court in refusing to grant a new trial on the ground of after-discovered evidence is assigned as error. As the case will be remanded for a new trial, it is unnecessary to discuss this assignment.

The last assignment of error is that the verdict is contrary to the evidence. As the case goes back for a new trial, we refrain from expressing any opinion as to the sufficiency of the evidence.

*Remanded.*