**People of the State of Illinois, Plaintiff-Appellee, v. Harold E. Trent and William E. Pfoutz, Defendants-Appellants.**

Gen. No. 10,854.

Fourth District.

July 5, 1967.

Albert E. Hurt, Public Defender, of Decatur, and Glenn O. Fuller, Assistant Public Defender, for appellants.

Basil G. Greanias, State's Attorney of Macon County, of Decatur, for appellee.

SMITH, J.

Defendants were jointly tried and convicted of the crime of armed robbery and were each sentenced to the penitentiary. Trial errors alleged as a ground for a new trial are as follows: (a) the trial court erred in refusing to suppress certain evidence obtained through an unreasonable search of the defendant's automobile, (b) the court erred in admitting into evidence a prior conviction of the defendant Pfoutz which was not infamous, (c) that the pieces of tape used in the robbery were not

properly identified and not properly traced through an unbroken chain of possession, and (d) that the defendants were not advised of their constitutional rights prior to a search and seizure of the automobile.

Two men held up the Redbird Service Station at gunpoint in Decatur about 11:00 p. m. on October 7, 1964. After obtaining about $170 from the attendant, he was taken into the back room of the station where his wrist and ankles were taped with adhesive tape. Around 2:00 in the early morning of October 8, the defendants were cruising around in the downtown streets of Springfield, Illinois. Police officers stopped them because a portion of the defendant's rear license plate was obscured with mud. The defendant Trent, who was driving, could produce no driver's license and was arrested for driving without a license. Defendant Pfoutz was also placed under arrest for allowing an unauthorized person to drive his automobile. Trent was immediately placed in a squad car and taken to police headquarters. After he left, Pfoutz got out of the automobile and talked with Detectives Wright and Lampkin. They testified that they asked him if it was o. k. to search his automobile and he said "go ahead." Pfoutz denies this. In plain sight on the seat was a blue baseball cap. They also found a roll of adhesive tape, two pairs of sunglasses, and a pair of brown jersey gloves. None of the items mentioned were removed from the car at the time of the arrest and Pfoutz was permitted to drive his own car down to the police station in the company of a police officer. The items in controversy were not actually removed from the car until some time later the same afternoon. The station attendant testified that the man with the gun had on a pair of brown jersey gloves and was wearing sunglasses. The second man was about 21 years old, wearing blue wrap around bubble sunglasses, and a blue sportsman's hat with a fish emblem in the center of the hat in front.

The hat was light blue or powder blue. The police officers testified that when they first arrested the defendants on the street, they believed that they could have been the persons involved in the Decatur robbery. They also testified that the report they had was that the men were between 20 and 24 years old, one wearing toe clips or toe caps and both wearing sunglasses, one pair wraparound, and one wore a blue baseball cap. The search at the scene of the arrest revealed the items to which we have just referred.

Our statute pertaining to search and seizure provides that when a lawful arrest is effected, the police may reasonably search the person arrested and the area within such person's immediate presence for the purpose of: "(d) Discovering any instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, an offense." Ill Rev Stats 1965, c 38, § 108–1. Such search may be made without a search warrant. The police officers testified and the trial court found in his order denying the motion to suppress the evidence that the defendant Pfoutz, the owner of the automobile, consented to the search of the automobile at the scene of the arrest. The consequences of such a consent is concisely stated in People v. Harris, 34 Ill2d 282, 285, 215 NE2d 214, 215, as follows:

> "Consent is a waiver of the constitutional privilege against unreasonable search, (People v. Henderson, 33 Ill2d 225; People v. DiGerlando, 30 Ill2d 544; People v. Fiorito, 19 Ill2d 246; Zap v. United States, 328 US 624, 90 L Ed 1477,) and where the evidence on the issue of consent is in conflict, this court will accept the finding of the trial court unless it is clearly unreasonable. (People v. DiGerlando, 30 Ill 2d 544; People v. Fiorito, 19 Ill2d 246; People v. Peterson, 17 Ill2d 513.) We cannot say that it was unreasonable to believe the officers' testimony on the

issue of consent. See People v. Henderson, 33 Ill2d 225."

It is clearly established in Illinois that some traffic violations would justify a present search of the automobile. The total absence of license plates, People v. Berry, 17 Ill2d 247, 161 NE2d 315, or an obscured license plate upon a car being driven in the early morning hours, People v. Esposito, 18 Ill2d 104, 163 NE2d 487, could reasonably suggest a serious violation of the law. People v. Watkins, 19 Ill2d 11, 166 NE2d 433. The argument that the items were not removed from the car until later on in the afternoon of the same day suggests that the search originally was unreasonable is not well founded. These articles were discovered at the time of the original search and the automobile from that time on was then in the custody and possession of the police officers until the articles were removed. See People v. Jeffries, 31 Ill2d 597, 203 NE2d 396. In any event the consent given by the defendant to the search obviates any constitutional questions of illegal search and seizure. There is nothing in this record to suggest that the testimony of the police officers as to the consent is unreasonable and nothing that militates against the truth of their testimony. The trial court correctly denied the motion to suppress the evidence.

The defendants further argue that the consent thus given by the defendant Pfoutz is invalid for the reason that he was not previously advised of his constitutional rights against unreasonable search and seizure and was not advised of his rights to consult with an attorney prior to giving the consent. This contention is without merit for several reasons. The constitutional protection given by both the Illinois and the Federal Constitutions against unreasonable search and seizure is wholly different than the constitutional protection against self-incrimination. The suggestion that Miranda v. Ari-

161

zona, 384 US 436, 16 L Ed2d 694, and its philosophy is applicable to illegal searches and seizures is without merit for the reason just stated and for the further reason that the Miranda decision was announced on June 13, 1966, while this case was tried in 1964. In Johnson v. New Jersey, 384 US 719, the Supreme Court held that the rule of Miranda did not apply to trials concluded before the date of the Miranda decision. A final reason why this point is not now before us is that it was not raised nor passed on in the trial court.

■ ■  The defendants further contend that the admission of a prior conviction of Pfoutz in Iowa into evidence was error for the reason that the crime for which he was there convicted is not an infamous crime under the laws of the State of Illinois. Burglary is an infamous crime in Illinois. Ill Rev Stats 1965, c 38, § 124–1. Defendants contend that the Iowa conviction, denominated "breaking and entering," is not comparable with or analogous to our burglary statute. The Iowa information charged that Pfoutz did break and enter the building of the Ruben Motor Company contrary to section 708.8 of the 1946 Code of Iowa. Our statute, chapter 38, section 19–1, Ill Rev Stats 1965, states "(a) A person commits burglary when without authority he knowingly enters . . . a building . . . with intent to commit therein a felony or theft. . . ." The defendants first urge that a charge of "breaking and entering" is not analogous to a charge of knowingly entering without authority. We must look to the gist of the offense in the foreign jurisdiction to determine whether the crime, if committed in Illinois, would be an infamous crime. People v. Witherspoon, 27 Ill2d 483, 193 NE2d 281. Surely the breaking and entering under the Iowa statute connotes and implies the same acts that our statute contemplates when it says "without authority he knowingly enters." It seems clear to us that the same acts or conduct would establish either the Iowa charge or the Illinois charge and that on this

162

point the gist of the charges is substantially the same. It is further urged that the Illinois statute requires as a material element of burglary that the entry be "with intent to commit therein a felony or theft." Section 769 of the Iowa Code provides that the prosecutor may file an information charging an indictable offense endorsing thereon the names of the witnesses and a minute or summary of the evidence relating to the guilt of the crime charged which he intends to prove by the witnesses. The minute evidence of one A. F. Stewart in the Iowa case shows that the defendant at the time that he broke and entered was "looking for money or things of value." Section 773.6 of the Iowa Code provides that these minutes serve as a bill of particulars to the defendant. It thus shows that the charge in Iowa would establish that there was an intent on the part of the defendant Pfoutz to commit a theft in the building. It seems to us that the charge for which he was indicted and convicted in Iowa is basically identical with the requirements of the Illinois statute on burglary, that such a conviction was a conviction of an infamous crime under the Illinois law, and that no error was committed in receiving this Iowa conviction into evidence for the purpose of impeachment.

█ In our judgment the tape offered in evidence was properly identified and a chain of proper protective custody established. The victim Ward removed the tape used to bind him, called the police and delivered it to Officer Chaney in a ball and all stuck together. Chaney then placed it in a brown manila bag after initialing it on two of the pieces. He placed a police I. D. tag on the package and placed it in the police evidence locker. He testified at the trial that two of the strips bore his initials and that People's Exhibit 4B was the same tape that he had placed in the brown manila bag and attached the police I. D. marker. Sergeant Schawitsch testified that he removed a package with brown wrapping paper and a string around it from the evidence locker and gave it to

163

Officer Miller. Miller testified that he received the brown paper wrapped up with the I. D. tag on it and delivered it to Officer Pitman. Pitman testified that he removed it from the package, that it was stuck together, and marked two places with Chaney's signature. He placed the tape in a package with a partial roll of tape, wrote a letter and delivered it to his secretary for mailing to the F. B. I. The secretary testified that she mailed it. F. B. I. Agent Duckett testified that he received the package containing six strips of adhesive tape stuck together and a partial roll of tape. He separated the six strips, marked them, and the partial roll of tape. On the trial, he identified the various strips of tape and testified that they all came from the same roll. He also testified as to the ball of tape and to the initials of Detective Chaney. Under these circumstances, it is our judgment that the tape in evidence was properly identified and that its course of travel was properly traced through successive hands. F. B. I. Agent Duckett's testimony makes it rather clear that there had been no tampering, alteration, or change in the tape by anyone.

It thus appears to us that the errors alleged in the trial of the case are without merit, and the judgment should be and it is hereby affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.