DR. GIULIO BRUNI, Plaintiff-Appellee, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Defendants-Appellants.

(No. 55275;

First District—October 31, 1972.

*Rehearing denied November 28, 1972.*

STAMOS, P. J., dissenting.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Roy L. Mondike, Assistant Attorneys General, of counsel,) for appellants.

John M. Bowlus and Russell Woody, both of Chicago, (Cotton, Watt, Jones, King & Bowlus, of counsel,) for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from three orders entered in an administrative review proceeding. The first, on May 18, 1970, vacated a dismissal for want of prosecution. The second, on May 25, 1970, reversed defendants' revocation of plaintiff's license to practice medicine. The third, on June 30, 1970, enjoined defendants from interfering with plaintiff's right to practice

medicine. The issue is whether the trial judge erred in entering these orders.

## I.

On April 15 and May 6, 1965, plaintiff Dr. Giulio Bruni, was convicted in two United States courts of offense against federal conspiracy and counterfeiting statutes. He was given two concurrent terms of five years imprisonment and ordered to pay a fine of $10,000. On June 22, 1966, at the conclusion of administrative proceedings, defendants, Department of Registration and Education and members of its Medical Examining Committee, found these convictions to be felonies and revoked plaintiff's license to practice medicine in Illinois. Plaintiff then filed a complaint for administrative review of the revocation order. On August 11, 1966, he applied for and obtained a stay of the revocation. A little more than three months later, on November 22, plaintiff entered a federal penitentiary to serve his sentences. In December 1966, his lawyer died. In June 1968, because of the stay order, plaintiff's license to practice medicine was renewed for the period ending July 1, 1970. In the meantime, plaintiff's administrative review complaint remained pending. Then, in a series of publication days (February 10, 11, 13, 14 and 17, 1969) as part of the circuit court trial call, notice was published in the Chicago Daily Law Bulletin that the complaint would be called for trial on February 17, 1969. Neither plaintiff, because he was in prison, nor his lawyer, because he was dead, responded to the call. Plaintiff's complaint was dismissed for want of prosecution. Notice was sent to the attorney who had died in December 1966.

On October 13, 1969, plaintiff was paroled. He returned to Chicago and resumed the practice of medicine. In January 1970, he discovered the dismissal of his administrative review complaint. He sought the advice of a new lawyer who, on April 22, 1970, pursuant to section 72 of the Civil Practice Act,[1] filed a petition to vacate the dismissal. The petition was allowed. Defendants contend this was error.

## II.

■■■ A petition under section 72 of the Civil Practice Act invokes the equitable powers of the court to the end that a litigant's opportunity to be heard is not unjustly denied. (*Elfman v. Evanston Bus Co.*, 27 Ill.2d 609, 190 N.E.2d 348.) The petition is addressed to the trial court's sound discretion and its ruling will be reversed only on a showing that the discretion was abused. *Goldman v. Checker Taxi Co.*, 84 Ill.2d 318, 228 N.E.2d 177.

■■ In this case, while he was in a Federal prison away from Chicago,

---

[1] Ill. Rev. Stat. 1969, ch. 110, par. 72.

and after his lawyer of record was dead, plaintiff's complaint was dismissed on notice published in a Chicago Law Bulletin. During hearing of the petition to vacate, the trial judge observed that existence of the order staying revocation of plaintiff's license and the later renewal of his medical license were factors which had to be considered in determining whether plaintiff was diligent in ascertaining the status of his complaint for administrative review after he was paroled. The trial court found that plaintiff had acted with diligence. We hold that it did not abuse its discretion when plaintiff's petition to vacate was allowed. The cases which defendants cite do not warrant a different conclusion.

### III.

After plaintiff's complaint was reinstated, the trial judge heard the parties, conducted an administrative review and reversed defendants' revocation of plaintiff's license to practice medicine in Illinois. Defendants contend this was error. They argue that in 1965 plaintiff suffered felony convictions in two courts of the United States. They point out that under section 16a.2 of the Medical Practice Act,[2] conviction of a felony was a ground for revocation of plaintiff's license to practice medicine; and that in 1967, this section was amended to provide that one of the grounds for revocation of an Illinois medical license was conviction of a felony in a Federal court.[3] Defendants insist that under the statute as it existed in 1965, illumined retrospectively by the 1967 amendment, each of plaintiff's convictions in the two United States courts was a "conviction of a felony" which authorized the license revocation they ordered after the 1966 administrative proceedings. Therefore, defendants conclude, the trial court erred in reversing their revocation of plaintiff's license to practice medicine.

Plaintiff contended in the trial court, and contends before us, that in 1965, conviction of a Federal felony was not a ground for revocation of a license within the meaning of section 16a.2 of the Illinois Medical Practice Act unless the Federal crime was also a felony under Illinois law. Plaintiff argues that the trial court ruled correctly in determining that the 1967 amendment to the Medical Practice Act could not retrospectively validate revocations which occurred prior to its enactment. Therefore, plaintiff concludes, the order that reversed defendants' revocation of his license must be affirmed. These contentions require us to decide, in

---

[2] Ill. Rev. Stat. 1965, ch. 91, par. 16a.2.
[3] Ill. Rev. Stat. 1967, ch. 91, par. 16a.2.

a case of first impression, whether, in 1965, a Federal felony conviction was ground for revocation of an Illinois medical license even though the Federal crime was not a felony in Illinois.

## IV.

■■ The grade of an offense is determined by the law of the jurisdiction where the crime is committed. (*State ex rel. Anderson v. Fousek* (Mont. 1932), 8 P.2d 791, 793; *State ex rel. Beckman v. Bowman* (1930), 38 Ohio App. 237, 175 N.E. 891.) Plaintiff was convicted of counterfeiting and conspiracy to violate Federal counterfeiting statutes,[4] each offense a felony as that term is construed by Federal courts. (See *Giammario v. Hurney* (3d Cir. 1962), 311 F.2d 285, 287.) The Federal classification of this offense is consistent with history. In early English law, counterfeiting was treason, an infamous crime punishable by death. (Perkins, Criminal Law 10, 356 (2d Ed. 1969).) In the Illinois criminal codes, from 1874 until 1961, counterfeiting was a felony, an infamous crime. (Moore's Criminal Law Secs. 3 and 573 (2d ed. 1890); Ill. Rev. Stat. 1874, ch. 38, pars. 111, 279; Ill. Rev. Stat. 1959, ch. 38, pars. 283, 587.) Despite its recognition as an Illinois crime, counterfeiting is principally an offense against the Federal government in its function as the issuer of money. Although variants of counterfeiting are found in State criminal codes, counterfeiting is essentially a Federal crime. (See *Fox v. Ohio* (1847), 46 U.S. 410.) For this reason, it is understandable that in 1961, without explanation, counterfeiting was omitted from the Illinois Criminal Code. (See S.H.A., ch. 38, § 17—3, Committee Comments.) This omission, however nice its history, does not require us to decide the status of counterfeiting in the law of Illinois in 1965.[5] Our decision involves the construction of a statute.

---

[4] 18 U.S.C. §§ 371, 471, 472, 474

[5] Nor need we determine whether forgery, as it is now found in the Illinois Criminal Code is an analogous offense. There are historical and practical difficulties in comparing counterfeiting with forgery.

Counterfeiting is a branch of forgery. 4 Bl. Comm. 88-9. Counterfeiting is an offense against governmental functions. Forgery is an offense against property. Perkins, Criminal Law 356-7 (2d ed. 1969). In Illinois, from 1874 to 1961, forgery and counterfeiting were companion offenses, both classified as felonies and infamous crimes. For the only reason we can discern (it is an offense against the Federal government), counterfeiting was omitted from the code but forgery remained. The penalties for all forms of forgery were brought within the range "[n]ot to exceed $1,000 or impisonment in the penitentiary from one to 14 years, or both." Ill. Rev. Stat. 1961, ch. 38, par. 17—3. This makes forgery a misdemeanor. (*People v. Hise*, 1 Ill.App.3d 43, 45, 272 N.E.2d 264) Yet, forgery is today, as it always has been in Illinois history, an infamous crime. See Ill. Rev. Stat. 1961, ch. 48, par. 124—1.

■■ In 1965 when plaintiff was convicted of counterfeiting in the Federal courts, section 16a.2 of the Illinois Medical Practice Act provided that "conviction of a felony" was a ground for revocation of a license to practice medicine.[6] There was no qualification that for revocation purposes a conviction outside Illinois was to be treated differently than one within. The unrestricted language of the statute conveyed the meaning that a conviction outside of Illinois was grounds for revocation of a license to practice medicine even though the offense involved was not a felony in Illinois. Then in 1967, the legislature amended section 16a.2 to provide that a license could be revoked for "[c]onviction in this or another State of any crime which is a felony under the laws of this State or conviction of a felony in a Federal court * * *." This language recognizes that conviction of a crime can be a felony in one State and a misdemeanor in Illinois.[7]

■■ It is an established rule that in ascertaining the meaning of a statute, where no provision aids its construction, recourse may be had to the language of subsequent acts of the same lawmaking body. (*People ex rel. Malone v. Mueller*, 328 Ill.App. 593, 611, 66 N.E.2d 516; compare *People ex rel. Holland Coal Co. v. Isaacs*, 22 Ill.2d 477, 176 N.E.2d 889.) This rule has a corollary principle: that in ascertaining legislative intent of statutory language, "[t]he whole record of the legislature, including acts passed at subsequent sessions, is open to ascertain such intent and, once ascertained, it will be given effect irrespective of priority of enactment." *Radford v. Cosmopolitan National Bank of Chicago*, 52 Ill.App.2d 240, 246, 201 N.E.2d 622; see *Gregory v. County of La Salle*, 91 Ill.App.2d 290, 234 N.E.2d 66.

■■ When this rule and its corollary are applied to the facts of this case, it appears that by the 1967 amendment the legislature made it clear

---

[6] This statute has been the law of Illinois since June 30, 1923 when the first Medical Practice Act was approved.

[7] In Illinois, a felony is an offense punishable by death or by imprisonment in the penitentiary. (Ill. Rev. Stat. 1965, ch. 38, par. 2—7.) Illinois courts have held that if the punishment for an offense is discretionary; imprisonment in a penitentiary, in a local jail, a fine only, or imprisonment and fine, the offense is a misdemeanor. *People v. Stavrakas*, 335 Ill. 570, 167 N.E. 852; *People v. Bain*, 359 Ill. 455, 195 N.E. 42; *People v. Spector*, 28 Ill.2d 554, 192 N.E.2d 926; *People v. Hise*, 1 Ill.App. 3d 43, 272 N.E.2d 264.

In Virginia, even though the punishment is discretionary and sentence is imprisonment in a local jail, the offense is a felony. *Fletcher v. Commonwealth* (1934), 163 Va. 1007, 175 S.E. 895.

In Texas, "An offense which may-not must-be punishable by death or by confinement in the penitentiary is a felony; every other offense is a misdemeanor." Tex. Penal Code art. 47. For other cases, see Annot. 95 A.L.R. 1115 (1934).

that conviction of a crime in another State was ground for revocation of a license to practice medicine only if that crime is a felony in Illinois. But as to a "conviction of a felony in a Federal court" there was no requirement that the offense be of that classification under Illinois law. By the language used, the legislature made explicit what had been implicit in the statute since 1923: a Federal felony conviction is ground for revocation of an Illinois license to practice medicine, even though the Federal crime is not a felony in Illinois. The legislature did this despite the commonly known fact that there are Federal felonies which are not felonies by the law of Illinois.[8] And, significantly, in making clear its intent, the legislature took from section 16a.2 of the 1967 Illinois Medical Practice Act the unlimited words, "conviction of a felony." This use of the same unrestricted language shows that 1965 "conviction of a felony" in section 16a.2, when used in connection with a Federal conviction, meant conviction of any felony, without regard to its classification in Illinois criminal law. This being so, and having found that plaintiff was convicted of a felony in two Federal courts, defendants properly applied the statute and revoked plaintiff's license to practice medicine in Illinois. (*Speer v. State* (Civ.App.Tex. 1937), 109 S.W.2d 1150; compare *State Medical Board v. Rodgers*, 190 Ark. 266 (1935), 79 S.W.2d 83; and see Annot., 12 A.L.R.3d 1213.) For these reasons, we hold that the trial judge erred in reversing the administrative decision. The stay of the revocation should have been vacated and the decision affirmed.

■■ Therefore, it follows that the trial judge also erred when he entered the order that enjoined defendants "[f]rom interfering in any respect with the right of the plaintiff Dr. Guilio Bruni from practicing medicine in all its branches under the Medical Practice Act of Illinois." Courts should not interfere with exercise of discretionary powers by executive officers unless there is such abuse of discretion that results in palpable injustice or injury. See *Eveland v. Board of Education of Paris Union School Dist.*, 340 Ill.App. 308, 92 N.E.2d 182.

We affirm the vacature order of May 18, 1970. We reverse the orders of May 25 and June 30, 1970, which reversed defendants' revocation of plaintiff's license and enjoined them from interfering with plaintiff in the

---

[8] In Federal law, a felony is an offense punishable by death or imprisonment for a term exceeding one year. 18 U.S.C. § 1. Federal courts have held that in determining whether a Federal crime is a felony or misdemeanor, the test is the maximum possible sentence. *Giammario v. Hurney*, 311 F.2d 285, 287 (3d Cir. 1962). For example, assault with intent to commit a felony, other than murder or rape, is punishable by a fine of not more than $3,000 or imprisonment for not more than ten years, or both 18 U.S.C. § 113(b). This offense is a felony under Federal law but a misdemeanor in Illinois. See *United States v. Anderson*, 425 F.2d 340 (7th Cir. 1970).

practice of medicine. The cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Affirmed in part; reversed in part
and remanded with directions.

SCHWARTZ, J., concurs.

Mr. PRESIDING JUSTICE STAMOS dissenting:

I respectfully dissent from the majority opinion. As I interpret that opinion, it is premised solely upon the assumption that the 1967 amendment to Section 16a(2) of the Medical Practice Act manifested a legislative intent to "make explicit" and "make clear" the terms of that statute. This is an assumption without foundation in fact or in law.

No committee comments accompany the 1967 amendment. We are unaware of the content of any debates which may have preceded its passage. Prior to 1967 no Illinois court had interpreted the phrase "conviction of a felony" as used in Section 16a(2). In short, there exists no basis, other than the mere fact of amendment, upon which this court can determine whether the legislative intent attending that amendment was one of clarification or of alteration. Under these circumstances, we must adhere to the pronouncements of two Illinois Supreme Court cases.

In *People ex rel. Clark v. Village of Wheeling*, 24 Ill.2d 267, 181 N.E.2d 72, the Illinois Supreme Court was asked to interpret the term, "highway," as used in Section 7—8 of the Revised Cities and Villages Act.[1] Subsequent to the decision in the trial court, the legislature had amended chapter 24 to obviate future uncertainty as to the meaning of that term. The Supreme Court, however, held that the amendment would have no bearing on its task of statutory construction. Mr. Justice Schaefer explained as follows: (24 Ill.2d at 268, 269)

"\* \* \* [T]he fact that the legislature reacted promptly to the trial court decision in this case, and made it clear for the future that it did not intend to permit municipalities to annex toll roads without the permission of the Toll Highway Commission, is not controlling. (Ill. Rev. Stat. 1961, chap. 24, pars. 7-1-2, 7-1-10.) Such a statutory change is usually equivocal, suggesting either that the legislative body has effected a conscious change in policy, (*Western National Bank of Cicero v. Village of Kildeer*, 19 Ill.2d 342, 353), or that it has simply prevented the recurrence of an erroneous interpretation (People ex rel. Spitzer v. LaSalle County,

---

[1] Ill. Rev. Stat. 1959, ch. 24, par. 7—8.

20 Ill.2d 18, 28). In this case, each of the parties espouses the interpretation appropriate to a decision in its favor.

Since the meaning of the annexation statute is not to be found in abstract definitions or in rubrics of statutory construction, it is necessary to analyze the relevant facts to determine whether annexation of the toll highway is authorized. * * *"

In *People v. Blanchett*, 33 Ill.2d 527, 212 N.E.2d 97, the Illinois Supreme Court had to determine whether an information complied with Section 111—3(a)(4) of the Code of Criminal Procedure of 1963.[2] Defendant contended that the mere recitation of the date of the offense and the county wherein it occurred did not amount to, "stating the time and place of the offense as definitely as can be done." In rejecting this contention, the Supreme Court relied primarily upon the comments of the drafting committee. The Court consciously overlooked a subsequent amendment to the code. This was explained by Mr. Justice Solfisburg as follows: (33 Ill.2d at 535).

"We have considered the action of the legislature in passing Senate Bill 740 on June 2, 1965, which substitutes the words 'date' instead of 'time' and 'County' instead of 'place' in section 111—3, par. (a)(4). This bill was approved by the Governor on June 18, 1965. While defendant argues that this indicates an intention to change the prior law and the State argues that it is a clarification, we do not believe that this act is an aid in construing the intention of the legislature in passing the original Code. We take this attitude because of the fact that the legislation was enacted while judicial interpretations of the original legislation were still unsettled."

This precedent cannot be ignored. The cases cited in the majority opinion are not to the contrary. They stand for general principles of statutory construction which are well rooted in Illinois law. None, however, stand for the proposition that an amendment, standing by itself, necessarily manifests a legislative intent to clarify rather than to alter the previous statute. In fact, the applicable presumption in Illinois, if any is to be applied, is quite the opposite. *Scribner v. Sachs*, 18 Ill.2d 400, 411, 164 N.E.2d 481.

It is my opinion that the 1967 amendment is of no aid in divining the meaning of the phrase, "conviction of a felony" as used in 1965 in Section 16a(2). Having taken this position, I shall set forth in the pages to

---

[2] Ill. Rev. Stat. 1963, ch. 38, par. 111—3(a)(4).

follow, my construction of that phrase, as well as my reasons for settling upon that construction.

The arguments of counsel and my own research have revealed four possible constructions for the phrase, "conviction of a felony." First, and as urged by Dr. Bruni, it might be construed narrowly, to have covered only convictions in Illinois courts of Illinois "felonies." However, such a reading would violate established rules of statutory construction. Each phrase of a statute must be construed in connection with every other provision in that act (*Huckaba v. Cox*, 14 Ill.2d 126, 150 N.E.2d 832), and in harmony with the purposes sought to be achieved by the enactment of the entire act. (*People v. Zimmerman*, 391 Ill. 621, 63 N.E.2d 850.) The phrase which we are construing is immediately preceded by the following paragraph.[3]

"1. Conviction of procuring or attempting or aiding to procure such an abortion as was made unlawful at the time under the provisions of the Criminal Code of this State; [1]"

I believe that the failure of the Illinois General Assembly to qualify the term, "felony," to the extent that it qualified the term, "abortion," manifested an intent to vest the former with extraterritorial breadth. This conclusion finds support in the purpose sought to be accomplished by Section 16a of the Medical Practice Act, which was not to further punish a convicted felon, but rather to protect the public from medical practitioners who, by their criminal conduct, had exhibited bad character. (*Ramsay v. Shelton*, 329 Ill. 432, 160 N.E. 769.) In order to give full effect to this purpose, it is essential that both the in-state and the out-of-state conduct of physicians be subjected to the scrutiny of the appropriate licencing agency. The people of Illinois could not be adequately protected, if the Department of Registration and Education was able to revoke a physicians's license for conviction of murder in Illinois, yet unable to revoke for conviction of murder in another jurisdiction. Therefore, I reject such a construction and conclude that the phrase, "conviction of a felony" embraced convictions of offenses in Illinois, in other states and in the Federal courts.

A second possible construction, one which is urged by the Department, is that the phrase, "conviction of a felony," meant the conviction in any jurisdiction of an offense, which, by the definition of the convicting jurisdiction, constituted a "felony." The leading case supporting this construction is *State ex rel. Olson v. Langer*, 65 N.E. 68, 256 N.W. 377, wherein the issue was whether the governor of North Dakota could be barred from holding office because of his conviction of the Federal of-

---

[3] Ill. Rev. Stat. 1965, ch. 91, par. 16a(1).

fense of conspiracy, a Federal felony, but a North Dakota misdemeanor. The constitution of North Dakota provided that one was ineligible to hold the office of Governor if he had been convicted of "a felony." The *Langer* opinion shall be quoted at length, for it succinctly states a position which has been followed in a number of other states. See Annot. 175 A.L.R. 784 (1948).

> "The respondent further insists that, even if a conviction of felony in the federal court be within the contemplation of section 127, as amended, nevertheless such conviction must be for an offense also made felony by the statutes of the state; that, in the instant case, the conviction in the federal court was for conspiracy under section 88, 18 USCA, supra, while under the statutes of North Dakota, section 9441 et seq., C.L. 1913, such offense is only a misdemeanor, and, accordingly, there was no conviction of felony within the meaning of that term in section 127, as amended. In disposing of this contention, we again must look to the theory and purpose underlying the constitutional provision. As we have shown, the reason for the disqualification therein provided is to protect the state by insuring that only those mentally and morally qualified shall participate in its elections. Acts constituting felony may differ in different jurisdictions. Statutes simply embody the standard established by the public conscience in those jurisdictions where they are enacted. Public sentiment may vary and standards change accordingly. But he who violates the statute must be held to know what he is doing when he does the prohibited act and to know the consequence in the way of penalty. His personal standard cannot be the measure of the character of the act or its depravity. The standard established by the lawmaking body of that jurisdiction must do that. State v. Malusky, 59 N.D. 501, 230 N.W. 735, 71 A.L.R. 190; State ex rel. Beckman v. Bowman, supra. Accordingly, he who sets himself above the law and does an act, regarded by the United States as of so serious a nature as to be prohibited and penalized as a felony, may well be held in that state to be unfit to participate in governmental affairs. See In re Minner, supra. We therefore hold that, consistent with the theory and purpose of section 127, as amended, whether an offense for which a conviction is had is a felony must be determined by the law of the jurisdiction where it is committed."

There are several weaknesses in this argument and in the statutory construction which it supports. It is the Illinois General Assembly which is responsible for establishing the qualifications for medical practitioners in Illinois. We should not presume that the General Assembly would

delegate its responsibility to another legislative body, unless such intent is manifested by *explicit* statutory language to that effect. Yet, if Section 16a(2) of the Medical Practice Act were construed as the Department and the *Langer* case suggest, it would clearly constitute such an implied delegation. This could also result in glaring inequities. For example, if in 1965 two Illinois physicians had been convicted of possession of marijuana, one in Illinois and one in Texas, under the *Langer* construction, the former would not have lost his license through Section 16a(2), but the latter would have.[4] Not only would the two physicians be accorded unequal treatment for identical conduct, but in revoking the latter's license, the Illinois Department of Registration and Education would be deferring to the Texas legislature's severe condemnation of the offense of possession of marijuana. I doubt that this was the intention of the General Assembly. Nor do I accept the argument in *Langer* that the basis for disqualification, or for revocation of a license, is the manifested willingness of a party to hold himself above a law which any jurisdiction has deemed of sufficient importance to designate a "felony." Rather, one is disqualified from holding office, or his license to practice his profession is revoked, because his commission of certain acts has reflected a character unsuitable for an office or profession requiring public trust. And it is for the disqualifying or revoking legislature to determine what acts are sufficiently anti-social to evince such an unsuitable character. For these reasons, I reject the reasoning of *Langer* and the construction which has been urged by the Department.

A third possible construction, one which was adopted by the Circuit Court below, is that the phrase, "conviction of a felony," embraced the conviction in any jurisdiction of an offense punishable in like manner as Illinois felonies. Applying this construction, the court held that, since the Federal crimes which Dr. Bruni committed were punishable in the alternative by fine or imprisonment, they did not constitute "felonies" for purposes of Section 16a(2) of the Medical Practice Act. I find this construction also unacceptable. It again suggests an implied delegation by the General Assembly of its responsibility for setting standards for medical practice in Illinois. There would exist the same potential for inequitable results. Again, in the absence of *explicit* statutory language to the contrary, I cannot presume this was the intention of the General Assembly in 1965.

The fourth possible construction, one which I would adopt, is that the statutory phrase, "conviction of a felony," referred to the conviction in

---

[4] Ill. Rev. Stat. 1965, ch. 38, par. 22—40; Texas Penal Code, Article 725b, pars. 2, 23 & Article 47, par. 53-58.

any jurisdiction of an offense for which there existed an analagous or comparative Illinois offense which was a felony. (*Matter of Donegan,* 282 N.Y. 285, 26 N.E.2d 260; *State ex rel. Arpagous v. Todd,* 225 Minn. 91, 29 N.W.2d 810; *Elder v. County Election Board,* 326 P.2d 776 (Okla.); *State ex rel. Barrett v. Sartorious,* 351 Mo. 1237, 175 S.W.2d 787 (concurring opinion, 175 S.W.2d at 791).) This construction focuses primarily upon the conduct engaged in. It requires, as a prerequisite to revocation under Section 16a(2), that the General Assembly has strongly condemned certain conduct by classifying it as a felony though the severe penalty ascribed. I believe that such an interpretation effectuates the statutory purpose of protecting the public from physicians of bad character and also preserves the primacy of the General Assembly's role in that protective scheme.

To apply this construction to the case at bar, one must initially determine whether the Federal offenses which Dr. Bruni committed found any exact counterparts in Illinois criminal law. In Illinois the offense of "conspiracy"[5] may or may not constitute a felony, depending upon the nature of the offense which was the object of the conspiracy. In 1965 Illinois did not have penal statutes regarding counterfeiting, passing counterfeit bills or possession of counterfeiting apparatus. Under these circumstances, it becomes necessary to examine the gist of the offense in the foreign jurisdiction to determine whether there existed a comparable offense in Illinois in 1965. (*People v. Witherspoon,* 27 Ill.2d 483, 190 N.E.2d 281; *People v. Trent,* 85 Ill.App.2d 157, 228 N.E.2d 535.) I have made such an examination and conclude that the Federal offense of which Dr. Bruni was convicted found its analogue in the following Illinois offense:[6]

"17—3. Forgery.]

(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered.

---

[5] Ill. Rev. Stat. 1965, ch. 38, par. 8—2.

[6] Ill. Rev. Stat. 1965, ch. 38, par. 17—3.

(b) An intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right, obliga- or power with reference to any person or property.

(c) A document apparently capable of defrauding another in- cludes, but is not limited to, one by which any right, obliga- tion or power with reference to any person or property may be created, transferred, altered or terminated.

(d) Penalty. A person convicted of forgery shall be fined not to exceed $1,000 or imprisoned in the penitentiary from one to 14 years, or both."

This offense was a misdemeanor under Illinois law. I therefore conclude that Dr. Bruni was not convicted of a "felony" as I have construed that term for purposes of Section 16a(2) of the Medical Practice Act. The revocation of his license under that provision was unlawful, and I would affirm the Circuit Court judgment to that effect.