THE PEOPLE *ex rel.* DENNIS P. RYAN, State's Attorney of Lake County, Plaintiff-Appellee, *v.* RONALD R. COLES, Defendant-Appellant.—THE PEOPLE *ex rel.* JACK HOOGASIAN, State's Attorney of Lake County, Plaintiff-Appellee, *v.* RONALD R. COLES *et al.*, Defendants-Appellants.—THE PEOPLE *ex rel.* LOWELL R. LLOYD, Plaintiff-Appellee, *v.* RONALD R. COLES, Defendant-Appellant.

Second District No. 77-220

Opinion filed October 10, 1978.

William C. Marlatt, Jr., of Lake Forest, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (William J. Blumthal, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal presents the question of whether a public official who has been convicted of extortion in violation of 18 U.S.C. 1951 is eligible to hold the office of township supervisor.

In March of 1976, Ronald R. Coles was convicted of two counts of extortion in violation of 18 U.S.C. 1951, in Federal court. At the time of his conviction, Coles was supervisor of Lake Villa Township. The Lake Villa Town Board of Auditors, pursuant to section 1 of "An Act to require the payment of compensation to any officer or employee of the State of Illinois who has been reinstated in his office or employment after reversal of his conviction for any crime" (Ill. Rev. Stat. 1975, ch. 102, par. 120), declared the office of township supervisor vacant. However, on June 23, 1976, the board appointed Coles to serve the unexpired term. On November 4, 1976, the Lake County State's Attorney instituted a quo warranto proceeding against Coles and the Lake Villa Town Board of Auditors, and on February 10, 1977, an order of ouster was entered by the circuit court of Lake County. Subsequently, a township election was held on April 5, 1977, and Coles was elected township supervisor. The State's

Attorney responded by filing a second quo warranto action, and this resulted in another order of ouster entered May 4, 1977. This is a consolidated appeal from the two ouster orders (hereafter appellant will be desiganted simply as "Coles").

` After Coles' brief was filed, the State's Attorney requested and received three extensions of time within which to file a brief, but never did so. Counsel for Coles at oral argument in this court appeared and presented his views but no one appeared on behalf of the People. Then, more than a week after the case was taken under advisement, the State's Attorney filed a motion asking for leave to file a brief. We denied that motion.

■■ Parties to an appeal are not justified in assuming that, as a matter of course, an appellate court will serve both as judge and as an advocate for the appellee, or search the record for the purpose of sustaining the judgment of the trial court. Where the appellee has filed no brief, it is within the discretion of an appellate court to reverse the judgment of the trial court if the appellant's brief demonstrates prima facie reversible error and the contentions of the brief find support in the record. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.) However, in the instant case, a question of considerable public importance is presented and the failure to fully explore the merits could leave Coles in office, but with his position clouded by lingering doubts concerning his statutory eligibility. Further, it is evident from the record that the trial judge gave this cause painstaking and thoughtful attention and it would be a grievous disservice to his conscientious efforts for this court to do less. Thus, we will do our best to fully explore the merits of Coles' contentions on appeal, in spite of the State's Attorney's failure to file a brief pursuant to the rules.

A reading of the constitutional and statutory provisions pertaining to the effect of criminal conviction on an individual's qualifications to hold public office is a prerequisite to the understanding of the various contentions which Coles has raised in this appeal. Article XIII, section 1 of the 1970 Constitution of the State of Illinois renders individuals convicted of a broad classification of crimes ineligible to hold constitutional office:

"§1. DISQUALIFICATION FOR PUBLIC OFFICE

A person convicted of a felony, bribery, perjury or other infamous crimes shall be ineligible to hold an office created by this Constitution. * * *."

Section 29—15 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 29—15) provides:

"§29—15. Conviction deemed infamous). Any person convicted of an infamous crime as such term is defined in Section 124—1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust, or

profit, unless such person is again restored to such rights by the terms of a pardon for the offense or otherwise according to law." Section 124—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 124—1) embraces a narrower classification of offenses than article XIII, section 1 of the Constitution:

" 'Infamous crimes' are the offenses of arson, bigamy, bribery, burglary, deviate sexual assault, forgery, incest or aggravated incest, indecent liberties with a child, kidnaping or aggravated kidnaping, murder, perjury, rape, robbery, sale of narcotic drugs, subornation of perjury, and theft if the punishment imposed is imprisonment in the penitentiary."

Section 5—5—5(a), (b), and (c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—5(a), (b), and (c)) also has reference to the effect of a conviction upon a person's eligibility to hold public office:

"Loss and Restoration of Rights.) (a) Conviction and disposition shall not entail the loss by the defendant of any civil rights, except under this Section.

(b) A person convicted of a felony shall be ineligible to hold an office created by the Constitution of this State until the completion of his sentence.

(c) A person sentenced to imprisonment shall lose his right to vote until released from imprisonment."

The trial court held that the elements of Coles' conviction in Federal court under 18 U.S.C. 1951 were the equivalent of a conviction for the crime of bribery under section 33—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 33—1) and that since bribery is an "infamous crime" under section 124—1 of the Code of Criminal Procedure of 1963, Coles was disqualified from holding office by section 29—15 of the Election Code. On appeal, Coles attacks this holding contending (1) the office of township supervisor is not a constitutional office and he is therefore not disqualified from holding such office by either article XIII, section 1 of the Constitution of the State of Illinois, or by section 5—5—5(b) of the Unified Code of Corrections of 1963; (2) that extortion under 18 U.S.C. 1951 is not the equivalent of bribery under section 33—1 of the Code of Criminal Procedure of 1963, and Coles is therefore not disqualified from holding office by section 29—15 of the Election Code; (3) that when section 29—15 of the Election Code, and section 5—5—5(a), (b), and (c) of the Unified Code of Corrections of 1963 are read together, it becomes clear that section 29—15 of the Election Code does not prohibit Coles from holding township office; (4) that in any event, section 29—15 of the Election Code is violative of article IV, section 8 of the Constitution of the State of Illinois 1970,

because it is not confined to a single subject; (5) that the legislature could not deny Coles his right to hold township office, absent constitutional authorization for such deprivation, and finally, (6) that the People, by failing to file a reply to Coles' answer, admitted the justification of authority pled by Coles in his answer.

At the outset, we find that we are in agreement with Coles' assertion that he is not disqualified from holding the office of township supervisor by reason of article XIII, section 1 of the Illinois Constitution or section 5—5—5(b) of the Unified Code of Corrections, since the office of township supervisor is clearly a creature of legislative enactment (see Ill. Const. 1970, art. VII, §5; Ill. Rev. Stat. 1975, ch. 139, par. 60) and not an office "created by" the State Constitution.

However, we cannot agree with Coles' other contentions. We begin by examining Coles' argument that a conviction for extortion in violation of 18 U.S.C. 1951 is not the equivalent of a conviction for bribery, for purposes of section 29—15 of the Election Code. Cole argues that if the legislature had intended a conviction of a Federal offense to stand as a disqualification for holding public office, it could easily have so provided in the statute, and that it was error for the trial court to "read into the statute what clearly is not there." Coles has also asserted that the conduct which formed the basis for his conviction under 18 U.S.C. 1951 would not have constituted the offense of bribery under Illinois law.

In regard to the question of legislative intent, the purpose of section 29—15 of the Election Code is obvious for:

> "When a public official is convicted of an infamous crime, there can be no doubt that public confidence in him and in his future performance in the unit of government in which he serves is seriously damaged, if not totally destroyed." (*People ex rel. Taborski v. Illinois Appellate Court, First District* (1972), 50 Ill. 2d 336, 339.)

To assure public confidence in the essential integrity of State and local government, the legislature decided that persons convicted of certain crimes manifesting moral turpitude, as enumerated in section 124—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 124—1) were disqualified from holding public office. Obviously, the rationale for this statutory disqualification would apply with equal force, regardless of whether a conviction was entered in the courts of this State, or of a sister State, or under the laws of the United States. (*Cf. People ex rel. Keenan v. McGuane* (1958), 13 Ill. 2d 520, *cert. denied* (1958), 358 U.S. 828, 3 L. Ed. 2d 67, 79 S. Ct. 47 (conviction for income tax evasion in Federal court held to be a conviction of an "infamous crime" within meaning of article IV, section 4 of the Illinois Constitution of 1870, even though not a crime under the Illinois Criminal Code or common law).)

Further, the precise title or caption of the statute under which an individual was prosecuted in a foreign jurisdiction is equally irrelevant to the legislative purpose in classing certain offenses as infamous crimes. Thus, in *People v. Trent* (1967), 85 Ill. App. 2d 157, the trial court held that an Iowa conviction constituted an "infamous crime" under section 124—1. On appeal the defendants argued that this was error, since the Iowa conviction had been for a crime denominated "breaking and entering," an offense which was not among those enumerated by name in section 124—1. The appellate court held that it was necessary to look at the "gist" of the offense in the foreign jurisdiction to determine whether the offense was an infamous crime under section 124—1, and that since the offense of "breaking and entering" under the Iowa statute, if committed in Illinois, would constitute the crime of burglary (one of the offenses enumerated in section 124—1), the trial judge did not err in holding that the Iowa conviction was an "infamous crime" under section 124—1. (85 Ill. App. 2d 157, 162-63.) Therefore, it is clear that if the conduct constituting the offense for which Coles was convicted under the laws of the United States would in substance have supported a conviction for one of the offenses enumerated in section 124—1 of the Code of Criminal Procedure of 1963, then Coles must be regarded as having been convicted of an "infamous crime" within the meaning of section 124—1.

From the order of the United States Court of Appeals for the Seventh Circuit, affirming Coles' conviction under 18 U.S.C. 1951, and a portion of the report of proceedings before the District Court for the Northern District of Illinois, where the conviction was entered, which has been included in the report in this case, we can determine the basis for the Federal conviction. At the time of the Federal offenses, Coles was president of the Lake County Board and Liquor Commissioner of Lake County. An applicant for a liquor license paid Coles $400 to $600 in cash at a prearranged meeting, after Coles stated that he would see about arranging a hearing on the application. Shortly thereafter, a hearing was arranged and held, and the liquor license was issued. In a second transaction, an application for a liquor license showed that the applicant did not live in Lake County, although a Lake County ordinance required licensees to be Lake County residents. This applicant gave Coles $300 "for his trouble" at a prearranged meeting and the applicant received his liquor license the same day. There was ample evidence demonstrating that the two applicants were induced to make payments to Coles by virtue of his official position as Lake County Liquor Commissioner.

■■ Would this course of conduct have supported a conviction for bribery, under section 33—1 of the Code of Criminal Procedure of 1963? This section provides in part that a person commits bribery when he:

"* * * receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 33—1(d).) "The essence of the crime of bribery is the giving to, and receiving or acceptance by, a public officer of something of value to influence him in the performance of his official duty * * *." (*People v. Clemons* (1962), 26 Ill. 2d 481, 483.) Since Coles accepted money which was tendered in order to influence his official acts as liquor commissioner, the "gist" of the offenses which led to his conviction under 18 U.S.C. 1951, would have constituted bribery under the Criminal Code of Illinois (see *People v. Thoms* (1975), 30 Ill. App. 3d 229, *cert. denied* (1976), 424 U.S. 968, 47 L. Ed. 2d 735, 96 S. Ct. 1465). While, as Coles has noted, the conduct in question would also fall within the ambit of criminal statutes, other than bribery (*i.e.*, official misconduct (Ill. Rev. Stat. 1975, ch. 38, par. 33—3); theft (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(c)), which are not infamous crimes under section 124—1 (theft being an "infamous crime" only when imprisonment in the penitentiary is imposed), we deem this fact to be irrelevant. Under the circumstances of this case, there was no error in the trial court's decision that Coles' conviction under 18 U.S.C. 1951 was the equivalent of a conviction for bribery, for purposes of section 124—1.

Coles' next assertion deals with what he sees as an apparent conflict between section 29—15 of the Election Code, which prohibits persons convicted of infamous crimes from holding any office of honor, trust or profit, and section 5—5—5 of the Unified Code of Corrections, which provides that a criminal conviction "shall not entail the loss by the defendant of any civil rights, except under this Section" (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—5(a)); the only disqualification mentioned in this section is section 5—5—5(b), which provides that persons convicted of a felony are ineligible to hold constitutional office until completion of their sentence. Coles notes that under section 29—15 of the Election Code eligibility to hold an office can be restored by pardon or "otherwise according to law" and urges that the only way that the two statutes can be given an "harmonious" construction, is to hold that section 5—5—5 of the Unified Code of Corrections has simply restored the right of anyone convicted of an infamous crime to hold statutory office "according to law."

■■ Apart from the fact that the construction which Coles urges would render section 29—15 of the Election Code a virtual nullity, our chief difficulty with Coles' argument is that we do not believe that the expectation of attaining or holding a public office is a "civil right" within

the meaning of section 5—5—5 of the Unified Code of Corrections. As noted in 29 Ill. L. & Prac. *Officers* §22 (1957):

> "The right to be appointed or elected to an office is not a property right but a mere privilege, and when an office is created by the General Assembly it may provide the qualifications required to hold such office, and it is immaterial that all citizens of the State do not possess all of the qualifications or fulfill all the requirements prescribed by the statute."

Being a mere "privilege" it seems clear that Coles' expectation of holding the statutory office of township supervisor would not amount to a "civil right" under section 5—5—5 of the Unified Code of Corrections. There is, therefore, no conflict between the two statutes in question, and the trial court did not err in giving effect to the plain meaning of section 29—15 of the Election Code.

■■ Coles has argued that section 29—15 is violative of article IV, section 8 of the Illinois Constitution of 1970, which provides that "[b]ills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Coles contends that the section deals with more than one subject, since it "defines when a conviction is deemed infamous (as explained in its title) and also provides certain effects of convictions * * *." This contention is invalid since "infamous crimes" are not defined in section 29—15, but are instead defined in section 124—1 of the Code of Criminal Procedure, to which section 29—15 merely refers.

Coles cited *Cusack v. Howlett* (1969), 44 Ill. 2d 233, for the proposition that "the legislature was not given the authority to expand constitutional qualifications or disqualifications for political office and lacks the power to do so." Coles' reliance on *Cusack* is clearly misplaced, since *Cusack* dealt with offices created by the constitution (*i.e.*, the judiciary), and not with an office created by the legislature, such as that of township supervisor. Where an office is created by legislative enactment, the legislature has the power to specify that certain classes of individuals are disqualified from holding the office, so long as the disqualification has a reasonable relationship to a legitimate State interest. *Hoskins v. Walker* (1974), 57 Ill. 2d 503; *Brown v. Kirk* (1976), 64 Ill. 2d 144.

■■ Finally, Coles has contended that the People's failure to file a reply to his answer entitled him to a judgment on the pleadings and that the trial court erred in denying Coles' motion praying for such a judgment. However, the facts in this case were never in dispute; the complaint and answer presented pure questions of law for the court to determine. Therefore, while the failure to file a reply may have worked as an admission of facts pleaded in the answer, neither the People nor the court were bound by the propositions or conclusions of law which were

advanced in the answer, and the court did not err in denying Coles' motion. See *People ex rel. Wheeler v. Rust* (1920), 292 Ill. 412.

For the foregoing reasons, the judgments of the circuit court of Lake County are affirmed.

Judgments affirmed.

BOYLE and WOODWARD, JJ., concur.